# CASES DETERMINED

AT THE

## *January Term, 1890.*

76 1
100 187
76 1
107 34
76 1
52 LRA 55n

BRAUNSDORF, Appellant, vs. FELLNER, Respondent.

*January 28 — February 25, 1890.*

*(1) Appeal: Evidence: Immaterial error. (2) Evidence of attachment. (3, 5) Instructions to jury: Mistake in stating fact: Burden of proof. (4) Payment by delivery of property: Conversion. (6) Damages: Loss of profits. (7) Evidence: Court and jury. (8) New trial as to single issue.*

1. An error in the admission of evidence on behalf of the defendant upon the issue raised by a counterclaim is immaterial where the trial court finally decided that the defendant had wholly failed to establish the counterclaim and the evidence could not have prejudiced the plaintiff as to the other issues.

2. The attachment of property by virtue of a writ of attachment cannot be proved by parol.

3. Where the trial judge, in stating to the jury facts as to which there is no controversy, makes a mistake so evident that the jury could not be misled thereby, it is the duty of counsel to call his attention thereto, and if that is not done no available exception to such mistake can afterwards be taken.

4. Where a debt is paid by the delivery of personal property the subsequent conversion of such property by the former debtor will not revive the debt.

5. The trial court having instructed the jury that "the burden of proof is upon the plaintiff to establish his complaint," it is *held* that if anything had occurred upon the trial which might change the rule as to the burden of proof upon some particular issue or question, the plaintiff should have called the attention of the court to that fact and have asked an instruction covering such issue.

Braunsdorf vs. Fellner.

6. Where goods were wrongfully but not maliciously attached, the owner cannot recover for any supposed loss of profits which he might have made from his business had it not been interrupted by the attachment.

7. The defendant having given an absolute bill of sale of his property and having surrendered possession thereof to the purchasers before an attachment was levied thereon, testimony by the purchasers' agent that the bill of sale was taken as security for a debt, and by the defendant that he supposed he was still to have control of the property, did not justify the trial court in stating to the jury, as a matter of fact and law, that the defendant had the power to control the property when the attachment was levied.

8. Under sec. 3071, R. S., this court has power, upon affirming a judgment in part and reversing it in part, to order a new trial as to the part reversed. Such an order is made in this case as to the assessment of defendant's damages on a counterclaim, his right to damages being in no way dependent upon plaintiff's recovery or failure to recover in the action. *Treat v. Hiles*, 75 Wis. 265, distinguished.

APPEAL from the Circuit Court for *Door* County.

The action was brought July 10, 1886, to recover a balance alleged to be due to the plaintiff on a sale of his interest in a partnership to the defendant. The defendant denied that anything was due from him to the plaintiff at the time the action was commenced, and counterclaimed for goods sold and delivered to the plaintiff, and also for a wrongful attachment of the defendant's property.

It appears that the parties had been partners in business, and that about March 8, 1886, the plaintiff sold his interest in such business to the defendant, the latter agreeing to pay therefor the sum of $2,592.76, and to loan to the plaintiff the further sum of $300, making in all the sum of $2,892.76. Of this amount $331.50 was paid at once by the delivery of certain articles of personal property; $200 was to be paid in one year, and the defendant gave his note therefor, secured by chattel mortgage; and $600 was to be paid at the end of two years, and was secured by the mortgage or conveyance of certain land to the plaintiff. A portion of the remaining $1,761.26 was to be paid by the delivery of 400

Braunsdorf vs. Fellner.

cords of maple wood and 150 cords of beech wood, and the balance was to be paid in hardwood lumber. It was left to the jury to determine " whether the agreement was that that wood should then be turned out and accepted as payment of the debt, and the wood become *Mr. Braunsdorf's,* or whether the agreement was that *Mr. Fellner* should pay it out of any wood that he. might have of that kind and description when *Mr. Braunsdorf* called for it within the time specified." The court instructed the jury that in the latter case nothing would become due on this remaining $1,761.26 until *Mr. Braunsdorf* asked for the wood and failed to get it, and that if, when the action was commenced, *Mr. Fellner* had delivered all the wood or lumber that had been called for, then they could not find that anything was due by virtue of the contract. The jury was further instructed that if they found that the agreement was that the wood and lumber should be turned over to *Mr. Braunsdorf* as payment of the debt, and enough was actually turned over to him to satisfy the claim for the balance agreed upon, then that indebtedness was wiped out; and that a subsequent conversion of the property so turned over would not revive such indebtedness.

Other facts will appear from the assignment of errors and from the opinion. The jury found that there was nothing due from the defendant to the plaintiff at the time the action was commenced, and assessed the defendant's damages by reason of the attachment proceedings at $700. From the judgment on such verdict in favor of the defendant the plaintiff appealed, assigning the following errors:

"(1) The court erred in permitting the defendant, on cross-examination of the first witness, Dean, to interrogate him on the affidavit for attachment, and also in admitting evidence of the defendant as to the same alleged transaction. (2) The court erred in excluding plaintiff's evidence by the witness James Tufts as to the amount and value of

lumber of the plaintiff which had been shipped by the defendant before the attachment. (3) The court erred in striking out a portion of Mr. Fellows' testimony, and refusing to admit other testimony this witness offered. (4) The court erred in refusing to receive evidence of witness Parker as to how much lumber there was near the pier which belonged to *Mr. Braunsdorf*, and the value thereof. (5) The court erred in refusing to let plaintiff prove the amount of pierage necessarily paid by him, and holding the plaintiff to the theory of a full adjustment at Sheboygan; thus excluding proof of all, except plaintiff's amendments filed on the trial. (6) The court erred in admitting evidence of the defendant as to his business of buying logs. (7) The court erred in receiving evidence of contracts by the defendant with parties south for sale of lumber, etc. (8) The court erred in restricting the cross-examination of the defendant. (9) The court erred in receiving the letter from Parker to Dean, and testimony in regard to same, in evidence. (10) The court erred in receiving the evidence of G. W. Youngs as to usual time of making contracts as to lumber. (11) The court erred in refusing to let the plaintiff show that *Mr. Fellner*, the defendant, attempted to use, and did use, a quantity of the logs after they were attached, and while attachment was on them. (12) The court erred in refusing to permit the plaintiff to show he did not receive the cargoes of wood and lumber charged him by the defendant. (13) The court erred in refusing to permit the plaintiff to show the value of the twenty acres alleged to have been deeded the plaintiff by the defendant. (14) The court erred in instructing the jury, as a matter of law, that taking the chattel mortgage deferred the payment of $200 for one year, and that that sum was thus disposed of and out of their consideration. (15) The court erred in instructing the jury as follows: 'It was next agreed that *Mr. Fellner* should have two years to pay $600 of the remaining

amount; in other words, that $600 of it should become due in two years.' (16) The court erred in refusing to instruct the jury, as requested by the plaintiff's counsel, that if the debt of $600 was due, and payment deferred because of a security promised to be given, and the security was not furnished, that the debt remained due immediately. (17) The court erred in instructing the jury that it was agreed that *Mr. Braunsdorf* was to take, and *Mr. Fellner* was to give him, 400 cords of beech wood, and it was agreed that the balance of the debt should be paid in hardwood lumber,— maple and birch. (18) The court erred in instructing the jury that, if the wood was actually turned out to *Braunsdorf* by *Fellner* at the time of the dissolution, that was a payment of that indebtedness and was wiped out. . . . And, if *Mr. Fellner* afterwards converted it to his own use, that would not revive the indebtedness. *Mr. Braunsdorf* would have an action against him for the wrong conversion of his property, the same as any other person whose property had been wrongfully converted. (19) The court erred in withdrawing from the consideration of the jury all evidence of the transaction and negotiations which occurred between the parties at Sheboygan on or about July 6, 1886. (20) The court erred in charging the jury as follows: 'In addition to that, under this general head of necessary expenses, you may allow the defendant such as would compensate him reasonably for the time that he lost in connection with this attachment suit, and any other item that he necessarily lost by virtue of this property being taken on this writ of attachment, if the testimony in the case shows that he has lost any; and you will bear in mind, on that question, the testimony given by the defendant himself in reference to it.' (21) The court erred in charging the jury as follows: 'Now, on these different issues, the burden of proof is upon the plaintiff to establish his complaint. Wherever there is an issue to be

Braunsdorf vs. Fellner.

determined by you in arriving at the conclusion, if there
is a fair preponderance of testimony in favor of the plaint-
iff you will find the issue in his favor; if there is not such
a preponderance of testimony you must find it for the de-
fendant.   In other words, if, upon the whole testimony
bearing upon the question, it is more reasonable and prob-
able that the truth is as claimed by the plaintiff on that
particular issue, you should find it in his favor; otherwise
not.'   (22) The court erred in refusing to set aside the spe-
cial verdict and grant a new trial."

For the appellant there was a brief by *Byron & Decker*
and *G. G. Sedgwick*, and oral argument by *Mr. Sedgwick*.

For the respondent the cause was submitted on the brief
of *Timlin & Manseau*.

TAYLOR, J.   The appellant brought his action against the
respondent in the circuit court for the purpose of recover-
ing money which he claimed to be due to him from the
respondent upon a sale to him of his interest in the copart-
nership business of Fellner & Braunsdorf.   The action was
commenced on the 10th day of July, 1886, and in said ac-
tion a writ of attachment was issued, and property sup-
posed to belong to the defendant was attached by virtue of
said writ, consisting of hardwood lumber, saw-logs, wood,
and shingles, which were appraised at the sum of $2,045.80.
The defendant traversed the allegations of the affidavit
upon which the attachment was issued; and upon the trial
of said traverse judgment was rendered in favor of the de-
fendant, and the property was returned to the defendant
on the 22d day of September, 1886.

To the claim of the plaintiff in the main action the de-
fendant answered, in substance, that he was not indebted
to the plaintiff at the time of the commencement of the
action.   The defendant also set up, by way of counter-
claim, that the plaintiff had wantonly and maliciously sworn

out the writ of attachment in said action, with intent to injure the defendant in his business, and claimed damages for such malicious act of the plaintiff. The defendant also set up the fact that, on the traverse of the writ of attachment, the attachment had been dissolved, and he claimed damages for taking and detaining his property under and by virtue of said writ.

On the trial of the action in the circuit court, the jury, by direction of the court, found a special verdict. The following is a copy of the special verdict and the answers of the jury: "1. Was there anything due and payable from the defendant to the plaintiff at the time this action was commenced, July 10, 1886? Answer. No. 2. If your answer to the first question is, 'Yes,' then how much was due and payable at the time this action was commenced? (Not answered.) 3. In addition to the $53.49 costs taxed on the traverse herein, at what sum, if any, do you assess the defendant's damages sustained in consequence of the attachment proceedings in this case? A. $700."

After the coming in of the verdict, and before the close of the term, a motion was made by the plaintiff " to set aside the verdict and every part thereof, and for a new trial on the minutes of the court, because the verdict was contrary to law and evidence, and for that damages were excessive, and because of errors in the rulings upon the trial." This motion was denied, and plaintiff excepted, and after judgment was entered upon the verdict the plaintiff appealed to this court.

The learned counsel for the appellant assigns thirteen exceptions to the rulings of the court in the reception and rejection of evidence on the trial, and eight exceptions to the instructions given to the jury, and for refusing to instruct the jury as requested by plaintiff.

The first exception is to the ruling of the court permitting defendant to examine the witness Dean, one of the

attorneys of the plaintiff, as to a conversation he had with the defendant in regard to attaching the property of the defendant in this action. The object of the examination was to show that Dean requested the defendant to permit the attachment for a larger sum than was due the plaintiff, so as to keep off other creditors. It is very clear that this evidence was wholly immaterial, except upon the issue raised by one of the defendant's counterclaims, which alleged that the attachment was maliciously sued out by the plaintiff. We think this evidence was competent on the issue raised by that counterclaim, as well as the evidence of the defendant on the same point. It was not, perhaps, a proper cross-examination of the plaintiff's witness at the time it was offered. This evidence, however, became wholly immaterial, because the court finally decided that the defendant had wholly failed to establish by the evidence any right to recover on said counterclaim, and we do not see how it could have prejudiced the plaintiff on the other issues in the case.

In view of the contract which was established by the evidence in the case, it was immaterial what was the amount and value of the lumber shipped by the defendant to the plaintiff before suit brought. Under the pleadings and evidence, the question was whether there was anything due from defendant to the plaintiff at the time of the commencement of the action. That question the court we think properly decided depended on the question whether the defendant had delivered the wood and lumber called for by the contract as fast as it was demanded by the plaintiff, or whether the defendant had delivered to the plaintiff the quantity of lumber and wood agreed upon before the action was commenced; its value having been before fixed by the parties by their agreement. The second, fourth, and twelfth exceptions were therefore not well taken. The exception to striking out the testimony of the

witness Fellows, that certain property had been attached by two attachments in favor of Grimmer and others, was not well taken. The attachment of property by virtue of a writ of attachment cannot be proved by parol, and it was on this ground that the evidence was stricken out.

The fifth exception is not sustained by the facts in the case. The plaintiff was permitted to prove the amount he paid for the pierage of certain wood shipped by him.

The sixth, seventh, and tenth exceptions relate to the admission of evidence as to the business of the defendant at the time the attachment was levied upon his property. This evidence was only admissible, if admissible at all, upon the question of damages for wrongfully attaching the defendant's property. Evidence of the general character of the defendant's business might be properly received upon this question; but evidence of particular contracts which the defendant may have had for the sale and delivery of property could only be admissible on the theory that the defendant was entitled to recover damages for the profits he might have secured from these contracts in case he had fulfilled them; and, as the profits of his business were not a legitimate item of damages in a case of this kind, such evidence should have been excluded. This question is fully considered further on in this opinion.

The eighth, ninth, and thirteenth exceptions. The evidence excluded under the eighth exception was entirely foreign to the issues in the case. The reading of the letter from Parker to Dean was probably not competent, as against the plaintiff; but its admission was not such error as should reverse the judgment. The refusal to permit the plaintiff to show the value of the lands upon which he had taken security for $600 was clearly right. It could only have been competent in an action to set aside the transaction for fraud, and no such issue was made in this case.

The eleventh exception was to the refusal of the court to

permit the plaintiff to show that the defendant, after the attachment, had a part of the logs attached sawed for a particular purpose. This offer, we presume, was to show that they were sawed before the attachment was dissolved; and, if so, we do not see why the evidence was not competent upon the question of damages. The record is, however, so confused upon these questions of evidence that it is very difficult to determine what the object of the offer was; and, were there no other material errors in the case, we should not reverse the judgment on account of the rejection of this offered evidence.

The fourteenth exception is to an instruction to the jury that the chattel mortgage deferred the payment of the $200 which it was given to secure for one year. The fifteenth exception is to an instruction that it was agreed that *Fellner* should have two years to pay $600 of the indebtedness of defendant to the plaintiff. It seems to us there is no foundation for these exceptions. All the evidence in the case shows that such was the agreement when the plaintiff sold his interest in the firm to the defendant.

The sixteenth exception is taken to the refusal of the court to instruct the jury that if the debt of $600 was due, and payment deferred because security was to be given, and the security was not furnished, the debt remained due immediately. We understand that the court refused this instruction on the ground that the evidence conclusively showed that the security agreed upon was in fact given according to the contract. We find nothing in the case which tends to show the contrary.

The seventeenth exception, that " the court erred in instructing the jury that it was agreed that *Mr. Braunsdorf* was to take, and *Mr. Fellner* was to give him, 400 cords of beech wood, and it was agreed that the balance of the debt should be paid in hardwood lumber,— maple and birch." If this instruction was given in the language found in the

bill of exceptions, it was clearly a mistake of fact, which must have been apparent to everybody. All the evidence in the case shows that the agreement was to pay in 400 cords of maple wood, 150 cords of beech wood, and the balance in hardwood lumber,— maple and birch. The mistake of fact was so evident that it could not have misled the jury to the prejudice of the plaintiff. The controversy was not as to what the terms of the contract were, but as to whether the defendant had performed it according to its terms. We are inclined to hold that in a case of this kind, when it is evident the trial judge has made a mistake in stating the facts to the jury, it is the duty of the counsel to call the attention of the judge to the fact at the time, and, unless that is done, no available exception can be afterwards taken by the party who might by possibility be prejudiced by it. The proposition of law stated by the court which is made the ground of the eighteenth exception, we think, is clearly a sound legal proposition.

The nineteenth exception is based upon a ruling of the judge withdrawing from the consideration of the jury all evidence of the transaction and negotiation which occurred between the parties at Sheboygan on or about July 6, 1886. This exception raises the question as to whether there was anything done by the parties at Sheboygan on or about July 6, 1886, which changed or altered the contract made between the parties at the time of the dissolution of the partnership, and when the plaintiff sold out his interest in such partnership to the defendant, on the 8th of March, 1886. After reading all the evidence in regard to what was said and done at Sheboygan on July 6, 1886, we have arrived at the same conclusion that the learned circuit judge did on the trial; and we are confirmed in the opinion held by the learned trial judge by the fact that the original complaint of the plaintiff in the action makes no mention of any contract made on July 6, 1886, nor of any

modification of the contract of March 8, 1886, but declares upon the contract of March 8, 1886, and claims damages for the breach of that contract alone; and it was not until after the trial of the action was commenced, and more than two years after the action was commenced, that the claim of a new contract was set up by the plaintiff by way of amendment to his original complaint.

The twentieth exception is to the instructions of the court to the jury in relation to the question of damages to be assessed in favor of the defendant on account of the attachment of his property by the plaintiff. We will speak of this matter in connection with other exceptions taken to instructions in regard to the question of damages to be assessed in favor of the defendant on account of the illegal attachment of his property.

The twenty-first exception is to an instruction of the learned judge upon the question as to the burden of proof. The material parts of the contract were in writing, and the controverted question for the jury was whether the defend· ant had delivered the wood and lumber as fast as called for by the plaintiff previous to the commencement of the action; and upon this controverted issue the learned circuit judge had instructed the jury at length and in a way not prejudicial to the rights of the plaintiff. If there was anything misleading in the general instruction complained of, the counsel for the plaintiff should have asked a further instruction. The general statement in the instruction, that "the burden of proof is upon the plaintiff to establish his complaint," is certainly a sound proposition of law; and if, upon the trial, anything had occurred which might change the rule as to the burden of proof upon some particular issue or question, and that changed state was material to the plaintiff's case, the plaintiff should have called the attention of the court to that fact, and have asked an instruction covering such issue. The general proposition of law

stated in the instruction was clearly right.   Upon the question as to whether the plaintiff was entitled to recover anything in this action, we think the verdict of the jury that there was nothing due to the plaintiff at the time the action was commenced is supported by the evidence; and we find no errors in the record which would justify this court in reversing the judgment dismissing the plaintiff's complaint.

As to that part of the judgment which adjudges that the defendant recover of the plaintiff the sum of $753.49 damages, and the costs and disbursements of the action, we think it should be reversed for the following reasons: It is very clear, from the evidence introduced upon the subject of the damages sustained by the defendant by reason of the unlawful attachment of his property by the plaintiff, that most of the damages assessed by the jury under the instructions of the court were assessed for supposed loss of profits which the defendant might have made from his business had it not been interrupted by the attachment of his property by the plaintiff.   This assessment of damages for supposed loss of future profits is, we think, in direct conflict with the decision of this court in the case of *Anderson v. Sloane*, 72 Wis. 566, 583, as well as with the well-settled rule of this court and of very many other courts in this country.   Upon the issue as to the defendant's damages, we think the learned circuit judge erred in several of his instructions upon the facts, as well as upon the law.

It appeared by the undisputed evidence in the case that, two days before the attachment in this case was levied upon the property of the defendant, he had sold most of said property to Mr. Grimmer and to Mr. Rowell by absolute bills of sale, and that, on the day before the attachment, the agent of these purchasers had marked the property with the names of such purchasers, and that such agent had taken possession of the property so marked, on behalf of

his principals. It is true, this agent said these bills of sale were taken as security for the debts due from the defendant to his clients; but he does not state or admit that the defendant had any right of possession or control over such property after such sale to his clients. The only other evidence on the subject of any right of control of this property by the defendant after making such sales to Grimmer and Rowell is the defendant's own statement. He testified upon the subject as follows: "I don't know as I thought I was agent to see to the sawing of that lumber." To the question, "So you didn't think you were his agent as to that property after you had made the bill of sale? You can answer that, 'Yes,' or 'No.' Answer. No, I can't. I considered I had the control of that property after I had made the bill of sale to Grimmer. The way I understood it, I could ship the lumber under Parker's orders. [Parker was Grimmer's attorney and agent.] I guess the attachment did interfere with Mr. Grimmer's possession of the property. When I made the bargain with Mr. Grimmer, the lumber was to be shipped under Mr. Parker's order, or Karel's. Question. So you supposed that you could go on and saw after you had made the bill of sale, and make profits as if you had made no bill of sale, did you? A. Yes; that was the understanding."

Upon this evidence the learned circuit judge charged the jury as follows: "Now, it appears, I think, without contradiction, that all of the lumber that he had, and all the logs not yet sawed into lumber, was sold by him; or, rather, bills of sale were given to Mr. Grimmer and another party,— Rowell & Sons, I believe. It is also agreed that these bills of sale were simply security for the indebtedness. Now, those bills of sale, those securities, and that incumbrance upon the property would, so far as anything in this case showed, have in no way interfered with his turning this property out upon the contracts, and realizing the contract

price for it.   He had, so far as these bills of sale were con-
cerned,— those incumbrances,— just as full control over his
property in that respect, as I understand the testimony.  If
it hadn't been for this attachment that lumber would have
gone to fulfil his contracts, if he had the lumber, and he
would have realized the price; and it would have gone to
Mr. Grimmer and Mr. Rowell, to pay their indebtedness,
so far as necessary; and, if there was anything left, it would
have come to him.   Now, the question is, Does the proof
in this case show that the attachment was the cause of his
not being able to turn the lumber out within the time?  If
it was, and the loss resulted, then you must assess the dam-
ages to the full amount that the proof shows that loss to
be."   The several parts of this instruction were excepted
to by the plaintiff.

In view of the fact that the evidence conclusively shows
that the defendant had not only given an absolute bill of
sale of this property to Grimmer and Rowell, but had sur-
rendered the possession to them before this attachment was
levied, admitting that the bills of sale were for security
only, it is very clear to us that the power to control that
property was in Grimmer and Rowell, and not in the de-
fendant.   And there is nothing in his evidence in which
he states that he understood or supposed he was to have
the control of the logs and lumber, and turn it out upon
his contracts, which would justify the court in stating to
the jury, as a matter of fact and law, that he had such
power of control and disposition.  If there was anything
in the evidence which tended to show such right of control
and disposition in the defendant, it certainly was not so
clearly proved as to justify the court in stating to the jury
that such fact was established by the evidence.   We think
this instruction was clearly erroneous.

Upon the evidence given by Mr. Parker, which is in no
way contradicted, it is clear to us that Mr. Grimmer and

Mr. Rowell could have maintained either an action of re-
plevin or trespass or trover for the logs and lumber and
other property described in their several bills of sale against
the sheriff for attaching the same. According to the evi-
dence, the actual title and possession was in them, and not
in the defendant, when the attachment was served, and the
defendant could not have maintained either of said actions
against the sheriff for levying upon said goods. He ad-
mittedly had no title to or right of possession at the time
they were seized by virtue of the attachment.

In his instructions upon the question of damages, the
learned circuit judge, among other things, instructed the
jury that they might assess as damages any profits the de-
fendant might have made upon his contracts for the sale
of lumber then unfilled, if he was prevented from filling
such contracts by reason of the attachment, and these in-
structions were duly excepted to by the plaintiff. It seems
to us these instructions are clearly a violation of the rule
as to damages laid down in the case of *Anderson v. Sloane,*
72 Wis. 566, and were erroneous. The justice of the rule
as stated in that case is illustrated by the verdict in this.
Here the evidence clearly shows that the defendant was not
only in embarrassed circumstances when the attachment
was served, but it appears that he was in fact insolvent,
unable to pay his debts, and had in fact transferred nearly
if not all his attachable property to a part of his creditors,
either in payment of or as security for their debts. It also
appears that he did not have on hand or under his control
the means of fulfilling his contracts then made for the de-
livery of lumber, or that he was in a position to perform
such contracts had no attachment been served. The court
very properly held that the attachment was not malicious,
and that no damages could be recovered on that theory of
the case. The damages which the defendant might have
suffered by reason of this attachment in not being able to

fulfil his contract are too uncertain, and too much a matter of mere conjecture and guess, to be made the basis of the verdict of a jury. That the verdict is a mere guess on the part of the jury is evident from the fact that the evidence of the defendant — which was really the only evidence of his loss and damage by reason of not being able to fulfil his contracts, and which he says he could have filled had it not been for the attachment of the plaintiff — was between $2,000 and $3,000.

That the instructions of the learned judge were in conflict with the rule laid down in the case of *Anderson v. Sloane*, 72 Wis. 566, it seems to us is too clear for argument. We do not deem it necessary to repeat the argument made in *Anderson v. Sloane*, which sustains the rule established in that case, that in a case of this kind the defendant could not recover for any supposed loss of profits from the interruption of his business. The authorities cited on pages 583 and 584 of the opinion in that case fully justify the rule there laid down; and in our opinion it is the most salutary rule to follow in cases of this kind, and should be especially applied to a case of the kind at bar, where the evidence tends strongly to show that the defendant's business was so precarious and his pecuniary embarrassment such, before the attachment was levied, as to render it extremely doubtful whether he could have made any profits from his business, even though the plaintiff had not attached.

We think the learned circuit judge should have set aside the verdict for damages, for the reason that the jury were misdirected upon that question, and because the damages were excessive. We think the only damages the defendant is entitled to recover in this case are the $53.49 costs upon the traverse of the attachment; $150 for expenses of the defendant incurred in setting aside such attachment; interest on the value of the property attached which belonged to the defendant at the time of the attachment, from the

date of the attachment to the time the attachment was dissolved and the property returned to him; the depreciation in the value of such property, if any, from the time it was attached until its return to the defendant; also the value of the defendant's time which he actually spent in procuring the setting aside of the attachment.

That part of the judgment which dismisses the plaintiff's complaint is affirmed, and that part which adjudges that the defendant recover $753.49 damages is reversed; the appellant to recover the usual costs in this court, except that in view of the fact that a large amount of printing in the plaintiff's brief seems entirely unnecessary, and also in view of the fact that a considerable part of the printing relates to the issue in the main action, the clerk, in taxing the appellant's costs, will allow for printing the sum of $75 only. The cause is remanded to the circuit court for a reassessment of the damages of the defendant as indicated.

In reversing the judgment in part and affirming it in part, and directing a new trial as to the assessment of the damages of the defendant, we have followed the decision of the supreme court of·Massachusetts in the case of *Boyd v. Brown*, 17 Pick. 453, 461. In that case the court held that, upon the whole evidence, the verdict in favor of the plaintiff was correct, but that an error had been made in assessing the plaintiff's damages. The judgment was affirmed as to the right of the plaintiff to recover, and the verdict as to the damages was set aside, and a new trial granted with respect to the damages only. Sec. 3071, R. S., expressly gives this court power to reverse, affirm, or modify a judgment in part, and, if necessary, to order a new trial. This power to affirm, reverse, or modify a judgment in part, and order a new trial, necessarily confers the power upon this court to order a new trial as to the part of the judgment reversed. The case at bar is one in which that power can be safely exercised, as the defendant's claim for

damages is in the nature of a counterclaim, and he would have been entitled to recover his damages in this action whether the plaintiff recovered or not. His right to damages in no way depends upon the fact that the plaintiff recovers or does not recover in the action. This case is clearly distinguishable from the case of *Treat v. Hiles*, 75 Wis. 265.

*By the Court.*— Ordered accordingly.