Christopher WATERS, by his Guardian ad Litem, Ardell W. Skow, Richard Waters and Connie Waters, Plaintiffs-Appellants-Cross-Respondents,

v.

Kenneth PERTZBORN, Diane Pertzborn and State Farm Fire & Casualty Co., Defendants-Respondents-Cross-Appellants,

Nicholas HAUS, Paula Haus, Al Haus and MSI Insurance Co., Defendants-Respondents.

Supreme Court

*No. 99–1702. Oral argument March 1, 2001.—Decided June 14, 2001.*

2001 WI 62

(Also reported in 627 N.W.2d 497.)

706

For the plaintiffs-appellants-cross respondents there were briefs by *Ardell W. Skow, Martha H. Heidt* and *Doar, Drill & Skow, S.C.*, Baldwin, and oral argument by *Matthew Biegert*.

For the defendants-respondents-cross appellants there were briefs by *Kay Nord Hunt, James R. Johnson, Brent R. Johnson* and *Lommen, Nelson, Cole & Stageberg, P.A.*, Hudson, and oral argument by *Kay Nord Hunt*.

For the defendants-respondents there was a brief by *Joe Thrasher* and *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake.

An amicus curiae brief was filed by *Michele M. Ford* and *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee, on behalf of Civil Trial Counsel of Wisconsin.

An amicus curiae brief was filed by *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*,

Green Bay, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. ANN WALSH BRADLEY, J. This negligence action is before us on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000). Christopher Waters and his parents, Richard and Connie Waters (plaintiffs), appeal from the circuit court's order bifurcating the issues of liability and damages for trial before different juries.[1] Defendants, Kenneth and Diane Pertzborn (Pertzborns) and their insurer, also cross-appeal the circuit court's order denying summary judgment on the grounds that genuine issues of material fact existed as to the applicability of the social guest exception to recreational immunity under Wis. Stat. § 895.52(6)(d) (1995–96).[2]

¶ 2. The court of appeals' certification specifically requests that we "determine whether the circuit court properly ordered trials on liability and damages before separate juries." We conclude that the circuit court is barred by statute from ordering separate trials before different juries on the issues of liability and damages arising from the same claim. We therefore reverse the circuit court's order bifurcating the trial. We also conclude that there exist genuine issues of

---

[1] The appeal and cross-appeal before us are from orders entered in the Circuit Court for Barron County, Judge Edward R. Brunner presiding.

Richard and Connie Waters are represented by separate counsel, but join in the arguments submitted on behalf of Christopher Waters for purposes of this appeal and cross-appeal.

[2] All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

material fact as to whether the social guest exception to recreational immunity applied when Christopher Waters was injured. We thus affirm the circuit court's order denying the motion for summary judgment. Accordingly, we remand the cause for further proceedings.

¶ 3. This case arises from a sledding accident that occurred in Rice Lake on November 24, 1996. The facts surrounding the accident are revealed in the depositions and affidavits that were submitted in support of and in response to the motion for summary judgment.

¶ 4. On the day of the accident, Christopher Waters, who was then ten years old, had been playing with 11-year-old Kathleen Pertzborn at the Waters' home. At some point that afternoon, the two children left to go to the Pertzborn home. In his deposition testimony, Christopher explained that the two left his home upon Kathleen's prompting. He testified that Kathleen brought him over to her house, telling him "let's go over to my house or something." Christopher took his snowboard and sled to the Pertzborns. It is undisputed that neither of Kathleen's parents invited Christopher to their home that day.

¶ 5. The children began sledding down a hill in the Pertzborns' front yard. At the base of the hill, the Pertzborn property abuts Hilltop Drive. Before long, Kathleen's mother, Diane Pertzborn, became aware that the children intended to sled down the hill in the front of the home. She admonished the children that they were not to sled down the hill without anyone watching for cars, and instructed the children to go sled at a local schoolyard. Nonetheless, the children set about making a path in the recently fallen snow and

took turns sledding down the hill and watching for cars.

¶ 6. A short while later Diane Pertzborn learned that the children were still in the yard and called Kathleen in for supper. Christopher stayed outside at the Pertzborns, waiting for Kathleen to finish eating. He testified that the children planned to go sledding at the local school after Kathleen's meal. Diane Pertzborn was unaware that Christopher was waiting outside. She testified that Kathleen told her that Christopher was going home to tend to his pet dogs and would be coming back later. Christopher denies that he told Kathleen that he intended to go home to tend to his dogs. Diane Pertzborn was aware that Kathleen and Christopher had plans to sled at the local school when Kathleen finished her meal.

¶ 7. After waiting for a while, Christopher became bored and decided to sled down the hill by himself. When Christopher reached the base of the hill and the edge of the Pertzborn property, he continued moving forward into Hilltop Drive. In the road, Christopher and his sled intersected the path of a vehicle driven by Nicholas Haus, a teenage neighbor. The vehicle struck Christopher and dragged him 74 feet before coming to a stop. Consequently, Christopher suffered severe and permanent injuries.

¶ 8. The plaintiffs brought this action against the Pertzborns, Nicholas Haus and his parents, and both families' insurers (collectively, the "defendants"). In their complaint, the plaintiffs alleged that the Pertzborns and the Hauses were negligent and that their negligence was the proximate cause of Christopher's injuries and his parents' loss of society and companionship.

¶ 9. After filing an amended answer asserting recreational immunity under § 895.52(2)(b) as an affirmative defense, the Pertzborns moved for summary judgment on that basis. The Pertzborns argued that because Christopher was engaged in a recreational activity (*i.e.*, sledding) on their property at the time he was injured, they were entitled to recreational immunity. They also asserted that the social guest exception of § 895.52(6)(d) did not apply because neither of them, as the owners of the property, expressly and individually invited Christopher to their home to sled. The plaintiffs countered by arguing that because Christopher was not injured on the Pertzborns' property, but was injured in the street, the Pertzborns were not entitled to immunity under § 895.52(2)(b). They also argued that the social guest exception to immunity provided by § 895.52(6)(d) applied because Christopher had been expressly and individually invited to the Pertzborns by Kathleen.

¶ 10. The circuit court denied summary judgment. The court determined that a genuine issue of material fact existed as to whether the social guest exception applied and that the plaintiffs were thus entitled to proceed under that exception to immunity. However, the court further concluded that, in the absence of such a statutory exception, the Pertzborns would be entitled to recreational immunity. The court explained that although Christopher was not injured on the Pertzborn property, immunity would attach because the continuous act of sledding began on the Pertzborn property.

¶ 11. Following the denial of summary judgment, the parties prepared for trial. The Pertzborns filed a motion to bifurcate the issues at trial, seeking separate trials on the questions of liability and damages. The

plaintiffs objected, contesting the circuit court's authority to bifurcate. At a motion hearing, during which the Hauses stated their support for the motion to bifurcate, the circuit court granted the Pertzborns' motion. The court, explaining that it was swayed by the time and expense that might be saved by bifurcation and the potential that bifurcation would facilitate settlement, noted the experimental nature of its decision:

> So I think it could save parties, plaintiffs and defendants money by attempting this, particularly if it—after the liability issue is tried, it results in a settlement, and I think maybe it's worth the effort at least to experiment with it to see if this would be a way to get this case on track and resolved sooner for both sides.

When making its ruling, the court made clear that the trials would be conducted before different juries.

¶ 12. The plaintiffs sought leave to file an interlocutory appeal challenging the bifurcation. The court of appeals granted leave to appeal noting the importance of the issue to the administration of justice. The Pertzborns then cross-appealed the circuit court's denial of their motion for summary judgment.

¶ 13. The court of appeals certified this case for our review. It did so specifically so that we could address the circuit court's order to try the issues of liability and damages before separate juries. While we also review the circuit court's denial of summary judgment on the basis that there were genuine issues of material fact as to whether the social guest exception to recreational immunity applied, we first address the certified issue.

I

■

¶ 14. The plaintiffs challenge the circuit court's order to bifurcate the issues of liability and damages on both statutory and constitutional grounds. They argue that the circuit court's order is not authorized, and indeed is prohibited by, the Wisconsin rules of civil procedure. The plaintiffs also allege that the order violates their rights to a trial by jury and a verdict agreed upon by five-sixths of the jury as guaranteed by Article I, Section 5 of the Wisconsin Constitution. We begin by addressing the statutory challenge. When a case may be resolved on non-constitutional grounds, we need not reach constitutional questions. *Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 612, 407 N.W.2d 873 (1987). We thus turn to the issue of whether a circuit court may, consistent with the Wisconsin Statutes, order separate trials before different juries on the issues of liability and damages arising from the same claim of negligence.[3]

¶ 15. The parties' debate with respect to the statutory validity of the circuit court's order bifurcating the trial centers on various statutory provisions promulgated under this court's rule-making authority. *See* Wis. Stat. § 751.12. The plaintiffs contend that bifurcation is not authorized by Wis. Stat. (Rule) § 805.05(2) and is prohibited by Wis. Stat. (Rule) § 805.09(2). The defendants maintain that under Wis. Stat. (Rule) § 906.11(1), as interpreted by the court of appeals in

---

[3] Our holding in this case responds only to the situation presented to us by the facts of this case: the bifurcation of issues for trial before different juries as ordered by the circuit court. We are not asked to decide the validity of separate trials before the same jury.

*Zawistowski v. Kissinger*, 160 Wis. 2d 292, 466 N.W.2d 664 (Ct. App. 1991), the circuit court has the authority to bifurcate issues for trial.[4]

¶ 16. As with the interpretation of a statute enacted by the legislature, interpretation of a statute promulgated under this court's rule-making authority presents us with a question of law that we review independently of the determination of the circuit court. *Jadair Inc. v. United States Fire Ins. Co.*, 209 Wis. 2d 187, 194, 562 N.W.2d 401 (1997). The goal of statutory interpretation is to ascertain and give effect to the intent of the enacting body. *Id.*

¶ 17. We conclude that there are two statutory impediments to the circuit court's order for separate trials on the issues of liability and damages before different juries. First, a review of the history of § 805.05(2) reveals that the omission of a provision that would allow for the bifurcation of separate issues was deliberate and was intended to disallow such bifurcation. Second, § 805.09(2) effectively bars the bifurcation of issues before different juries, because that statute requires that the same five-sixths of the jury must agree on all the questions before a valid verdict can be entered.

¶ 18. We begin with the impediment to bifurcation posed by § 805.05(2). Section 805.05(2) is the rule of civil procedure that authorizes the circuit court to conduct separate trials under certain circumstances:

> (2) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when sepa-

---

[4] "Defendants" here refers to the Hauses, Pertzborns, and their insurers, who are all respondents to the plaintiffs' appeal on the matter of bifurcation.

rate trials will be conducive to expedition or economy, or pursuant to s. 803.04(2)(b), may order a separate trial of any claim, cross-claim, counter-claim or 3rd party claim, or of any number of claims, always preserving inviolate the right of trial in the mode to which the parties are entitled.

Wis. Stat. (Rule) § 805.05(2).

¶ 19. On its face § 805.05(2) does not authorize the bifurcation of issues. While this alone is not neces-sarily indicative of an intent to disallow bifurcation, the drafting history of that subsection reveals that the omission of language providing for separate trials on individual issues was deliberate and was intended to disallow the bifurcation of issues. We note at the outset of our discussion that we do not often come upon extrin-sic materials that so clearly and concisely provide insight into the intent of a body enacting a statute as those that guide our determination in this case.

¶ 20. Section 805.05 was created as part of the 1976 revision of the rules of civil procedure. The pro-posed changes to the statutes were drafted by a committee of the Judicial Council and submitted to this court for adoption.[5] The commentary of the Judicial Council Committee accompanying § 805.05, as pro-posed to the court, explains that while § 805.05(2) is patterned on Federal Rule of Civil Procedure 42, it does

[5] Under Wis. Stat. § 751.12, this court is granted the authority to promulgate rules regulating pleading, practice and proceedings in the courts of this state. The Judicial Council is the body charged with acting in "an advisory capacity to assist the court in performing its duties under [§ 751.12]." § 751.12.

We may look to Judicial Council materials in determining the meaning of a statute promulgated under our rule-making authority. *See State v. Lee*, 197 Wis. 2d 959, 964 n.3, 542 N.W.2d 143 (1996).

not provide for bifurcation of issues, as does its federal counterpart:

> This section is based in large part on Federal Rule 42.
>
> Unlike Federal Rule 42, sub. (2) does not permit bifurcation of issues, but only separate trial of discrete claims.

Judicial Council Committee's Note, 1974, Wis. Stat. (Rule) § 805.05(2) (1977).[6] The records of the Judicial Council reveal that language allowing for separate trials on issues was proposed but rejected by the Judicial Council Civil Rules Committee.[7]

---

[6] Federal Rule of Civil Procedure 42(b) reads as follows:

(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial on any claims, cross-claims, counterclaims, third-party claims, *or issues*, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b) (emphasis added).

Secondary sources discussing the contrast between § 805.05(2) and Federal Rule 42 have explained the practical effect of this in a negligence action:

Unlike Federal Rule 42, subsection (2) does not permit separate trials for separate issues (for example, in a negligence action, separate trials on the issue of liability and the issue of damages), but rather, separate trials for discrete claims.

Patricia Graczyk, *The New Wisconsin Rules of Civil Procedure: Chapters 805–807*, 59 Marq. L. Rev. 671, 680 (1976); *see also* 3A Jay E. Grenig & Walter L. Harvey, *Wisconsin Practice: Civil Procedure* § 505.3 (1994).

[7] The first proposed draft of § 805.05(2) prepared by the Judicial Council Rules Revision Committee followed the approach of Federal Rule 42 and allowed separate trials for "any

¶ 21. Moreover, the intent of the drafters to disallow affirmatively bifurcation of issues is found in the correspondence of the Judicial Council Committee members. In an August 1974 letter, the Chairman of the Judicial Council explained the Committee's intent in drafting § 805.05(2) to an inquiring member of the state judiciary:

> The rule has been intentionally written to provide that only claims can be bifurcated and that issues cannot be bifurcated. An exception to that is the bifurcation of an issue of insurance coverage under 803.04(2)(b).[8]

¶ 22. Most indicative of an intent to disallow bifurcation of issues are the materials presented to this court prior to its adoption of § 805.05(2). In 1974, the Judicial Council submitted its proposed version of § 805.05(2) to the court. The court then conducted public hearings and accepted input from interested

---

separate issue or of any number of claims, or issues." Tentative Draft No. 1, 805.07 (Rule 42), Judicial Council Civil Rules Revision Committee, December 1972. In January 1973, the Committee, by a 5–2 vote, struck all language allowing separate trials for issues. Minutes of January 19 & 20, 1973 Meeting of the Judicial Council Civil Rules Revision Committee at 3. Section 805.05(2) as it appears in the second proposed draft is substantially the rule that was adopted by this court. *Compare* Tentative Draft No. 2, 805.07 (Rule 42), Judicial Council Civil Rules Revision Committee, February 1973 *with* Wis. Stat. § 805.05(2).

· The records of the Judicial Council Committee are on file with the Wisconsin State Law Library.

[8] Letter from Reuben W. Peterson, Chairman, Judicial Council, to the Honorable Michael T. Sullivan, Circuit Court for Milwaukee County (April 16, 1974) (on file with Wisconsin State Law Library).

parties. Included in the feedback received by the court were calls for the inclusion of a provision in § 805.05(2) that would allow for the bifurcation of issues.[9]

¶ 23. In response to the objections to proposed § 805.05(2), the Judicial Council submitted a memorandum to the court reiterating its position with regard to the bifurcation of issues. The Council explained that it deliberately drafted a rule that did not allow for bifurcation of issues:

> 805.05(2) This permits bifurcation of claims but does not permit bifurcation of issues, except for insurance coverage issues. The Committee did not accept the suggestion that issues could also be bifurcated.

---

[9] For example, the Executive Committee of the Milwaukee County Board of Judges submitted, on several occasions, its recommendation that bifurcation of issues be allowed under § 805.05(2)(b). *See* Letter from the Honorable Michael T. Sullivan, Circuit Court for Milwaukee County, to Honorable Horace W. Wilkie, Chief Justice, Wisconsin Supreme Court (Jan. 23, 1975); Letter from the Honorable Michael J. Barron, Circuit Court for Milwaukee County, to the Justices of the Wisconsin Supreme Court (Apr. 26, 1974). Another organization objecting to the proposed § 805.05(2) and pursuing a provision that would allow for bifurcation of issues was the Milwaukee Junior Bar Association. *See* Letter from Heiner Giese, Member, Executive Board, Milwaukee Junior Bar Association, to Justices of the Wisconsin Supreme Court 3 (Oct. 21, 1974). Numerous objections and recommendations were also made by individual law firms and members of the bar. *See, e.g.,* Letter from John E. Schapekahm, Kasdorf, Henderson, Dall, Lewis & Swietlik, to Justices of the Wisconsin Supreme Court 7 (Oct. 31, 1974).

The cited materials are on file with the Office of the Clerk of the Supreme Court.

Drafting Committee's Memorandum Brief in Response to Objections, at 5 (August 1974) (on file with Wisconsin State Law Library).

■

¶ 24. After receiving the objections and the response of the Judicial Council, this court subsequently adopted § 805.05(2) as proposed by the Judicial Council. *See* Supreme Court Order, 67 Wis. 2d 585, 691–93 (1975). The documented history of § 805.02(2) thus demonstrates that the Judicial Council drafted, and this court adopted, § 805.05(2) specifically intending that issues were not to be bifurcated. Given this clear evidence of an intent to disallow bifurcation we conclude that the circuit court's order to bifurcate the trial of separate issues before different juries contravenes § 805.05(2).

¶ 25. In addition to § 805.05(2), our conclusion that the circuit court's order to bifurcate was invalid is reinforced by § 805.09(2). That provision, which establishes the requisite elements of a valid jury verdict, states as follows:

> (2) Verdict. A verdict agreed to by five-sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same claim, the same five-sixths of the jurors must agree on all the questions.

Wis. Stat. (Rule) § 805.09(2).

■

¶ 26. In prior cases we have explained that § 805.09(2) codifies the constitutional guarantee of a five-sixths jury verdict of Article I, § 5 of the Wisconsin Constitution. *Giese v. Montgomery Ward, Inc.*, 111 Wis.

2d 392, 401, 331 N.W.2d 585 (1983).[10] While the first sentence of the statute codifies the constitutional protection, the second sentence provides protection more explicit than the constitutional guarantee.[11] The second sentence of § 809.05(2) requires the same five-sixths of a jury to agree to all questions necessary to sustain a claim in order for a jury's verdict to be valid. We have explained that this language requires a "claim-by-claim" review of a verdict. *Id.* Thus, when we subject a verdict to scrutiny, we examine each question necessary to sustain a claim to insure that the same five-sixths of the jury agrees on all the issues necessary to sustain that claim. *Id.*

■

¶ 27. We believe that the circuit court's order to bifurcate the issues of liability and damages and to try them before different juries cannot be reconciled with

---

[10] Article I, Section 5 of the Wisconsin Constitution provides:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

Wis. Const. art. I, § 5.

[11] The language requiring that the same five-sixths of the jury agree on all the questions necessary to sustain a claim was created by the legislature in 1951. Chapter 36, Laws of 1951; *see* Wis. Stat. § 270.25(1) (1973). Identical language was adopted by this court when it promulgated § 805.09(2). *See* Supreme Court Order, 67 Wis. 2d 585, 700 (1975); *see also* Tentative Draft No. 1, 805.11 (Rule 48), Judicial Council Civil Rules Revision Committee, February 1973 ("Sub. (2) is virtually identical to s. 270.25 (1).").

the requirements of the § 805.09(2) five-sixths verdict protection. In the context of a negligence claim, in order for a jury to render a valid verdict under the plain language of § 805.09(2), the same five-sixths of the jury must agree on all questions necessary to sustain that claim of negligence. Because the requirement that the same five-sixths of the jury must agree on all questions cannot be met where the questions are answered by an entirely different jury panel, we conclude that the circuit court's order in this case is invalid.

¶ 28. In light of the statutory provisions and statutory history that we believe wholly undermine the validity of the circuit court's order to bifurcate, we only briefly address several arguments raised by the defendants in support of their position.

¶ 29. In advancing their statutory argument, the defendants rely to a large degree on the court of appeals decision in *Zawistowski*, 160 Wis. 2d 292. In *Zawistowski*, the court of appeals approved of a circuit court's order to bifurcate issues in a defamation trial. After examining numerous statutory provisions, including § 805.05(2), the court of appeals concluded that § 906.11(1) provided the circuit court with the "inherent discretion to bifurcate issues for reasons of judicial economy." *Id.* at 300.[12]

---

[12] Section 906.11, entitled "Mode and order of interrogation and presentation," states in pertinent part:

> (1) Control by judge. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment.

Wis. Stat. (Rule) § 906.11(1).

¶ 30. In *Zawistowski*, the court of appeals concluded that while § 805.05(2) does not authorize bifurcating individual issues of trial, "neither does it prohibit the trial court from taking such an action." *Id.* at 299. This conclusion cannot stand in light of the statements of intent to disallow bifurcation revealed in the statutory history of § 805.05(2) presented above. While it is unclear from the *Zawistowski* decision whether the circuit court contemplated trials before the same or different juries, to the extent that opinion is inconsistent with today's decision, it is overruled.

¶ 31. Moreover, while we agree that the evidentiary rule § 906.11(1) provides the circuit court with broad discretion in its control over the presentation of evidence at trial, that discretion is not unfettered. It must give way where the exercise of discretion runs afoul of other statutory provisions that are not discretionary. In the context of bifurcation of issues for trial before different juries, § 805.05(2) and § 805.09(2) limit that discretion.[13]

¶ 32. The defendants also present an argument addressing the powers of this court and the court of

[13] The defendants also argue that under the rule of legislative acquiescence, we should consider the legislature to have acceded to the court of appeals interpretation of § 906.11 and § 805.05(2) in *Zawistowski v. Kissinger*, 160 Wis. 2d 292, 466 N.W.2d 664 (Ct. App. 1991), through its silence. The doctrine of legislative acquiescence is a means of ascertaining the intent of the legislature. *See State v. Olson*, 175 Wis. 2d 628, 641, 498 N.W.2d 661 (1993). The defendants' argument ignores that the statutes at issue in this case and in *Zawistowski* originated with this court and not with the legislature. Although we share the power to regulate pleading, practice, and procedure with the legislature under § 751.12, the fact that the statutes at issue were promulgated by this court minimizes the legislative acquiescence argument.

appeals to remand cases upon reversal for the retrial of discrete issues rather than directing that the entire case be retried. The defendants essentially assert that the bifurcation of issues by the circuit court is indistinguishable from the retrial of isolated issues on remand and that we cannot invalidate one practice without calling into question the other.[14] We disagree.

¶ 33. Wisconsin Stat. § 808.09 grants the appellate courts of this state the power to remand issues for a new trial. It specifically provides that an appellate court may "reverse, affirm or modify [a] judgment or order as to any or all of the parties; [and] may order a new trial." Wis. Stat. § 808.09. Over a century ago we explained that "[t]he power to affirm, reverse, or modify a judgment in part, and order a new trial, necessarily confers the power upon this court to order a new trial as to the part of the judgment reversed." *Braunsdorf v. Fellner*, 76 Wis. 1, 18, 45 N.W. 97 (1890). This remains true today. Thus, contrary to the defendants' assertions, remand for partial retrial by an appellate court and bifurcation by a circuit court are distinguishable. One is specifically authorized by statute, whereas the other is prohibited.

¶ 34. Finally, we note defendants have raised numerous policy arguments advancing the merits of bifurcated trials on separate issues. Because we have concluded that the question of bifurcation raised in this case is addressed by § 805.05(2) and § 805.09(2), we will not entertain these policy arguments to reach a result contrary to that required by the statutes. To do

---

[14] In their briefs, the Pertzborns raise this argument in response to the plaintiffs' constitutional challenge. However, the argument they raise is equally applicable and worthy of discussion in the statutory context, primarily with reference to § 805.09(2).

so on appeal would be an inappropriate exercise of our rule-making power. *See Rupp v. Travelers Indem. Co.*, 17 Wis. 2d 16, 23, 115 N.W.2d 612 (1962). This court makes changes to pleading and practice rules through the procedure set forth in Wis. Stat. § 751.12. *Id.*

■

¶ 35. In sum, the court of appeals has asked us to "determine whether the circuit court properly ordered trials on liability and damages before separate juries." In answering the certification, we conclude that bifurcating the issues of liability and damages for separate trials before different juries cannot be reconciled with the rules of civil procedure. Because there is an intent to disallow bifurcation of separate issues underlying § 805.05(2) and because it is impossible for different juries trying bifurcated issues of liability and damages to render a valid verdict under § 805.09(2), we conclude that the circuit court's order to bifurcate is invalid. Having concluded that § 805.05(2) and § 805.09(2) are determinative of this appeal, we need not address the plaintiffs' constitutional challenge.[15]

## II

¶ 36. We next turn to the issues raised on the Pertzborns' cross-appeal. The questions posed by the cross-appeal relate to the circuit court's denial of summary judgment and the interpretation and application of the recreational immunity statute, Wis. Stat. § 895.52.

---

[15] Additionally, because we can decide this issue as a matter of statutory law, we need not address certain arguments raised by the defendants in which they advance extra-jurisdictional case law to establish a common law authority to bifurcate issues for trial.

¶ 37. We review a grant or denial of summary judgment independently of the determination rendered by the circuit court, applying the same methodology used by the circuit court. *Robinson v. City of West Allis*, 2000 WI 126, ¶ 26, 239 Wis. 2d 595, 619 N.W.2d 692. A motion for summary judgment shall be granted when the pleadings and supporting papers reveal no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). The interpretation and application of a statute present questions of law, subject to our independent review. *State v. Magnuson*, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536.

¶ 38. In challenging the circuit court's denial of summary judgment, the Pertzborns claim that the social guest exception to recreational immunity provided by § 895.52(6)(d) does not apply and that they are entitled to recreational immunity under § 895.52(2)(b)[16] for any damages arising from Christopher's accident. We agree with the circuit court that under the facts of this case it is improper to grant summary judgment to the Pertzborns. The summary judgment materials present genuine issues of material fact as to whether the § 895.52(6)(d) social guest exception to recreational immunity applies.[17]

---

[16] Wisconsin Stat. § 895.52(2)(b) states:

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

Wis. Stat. § 895.52(2)(b).

[17] The circuit court denied the Pertzborns' motion for summary judgment, concluding there exist genuine issues of

¶ 39. Under § 895.52(2)(b), the precondition for recreational immunity is that the injury be to or caused by a person engaging in recreational activity on the owner's property. *Verdoljak v. Mosinee Paper Corp.*, 200 Wis. 2d 624, 634, 547 N.W.2d 602 (1996). Christopher was injured while he was engaging in a recreational activity. *See* Wis. Stat. § 895.52(1)(g) (including sledding as a recreational activity). However, recreational immunity is subject to statutorily enumerated exceptions, including the social guest exception of § 895.52(6)(d).

¶ 40. Under the social guest exception, invited social guests, unlike permitted entrants, may proceed against a landowner under certain circumstances when they are injured while engaged in a recreational activity. *See Ervin v. City of Kenosha*, 159 Wis. 2d 464, 475, 464 N.W.2d 654 (1991) (drawing distinction between permitted entrants and invited social guests). The social guest exception is established by § 895.52(6)(d) and exists where there is an express and individual invitation made to the injured party by the private property "owner" for the specific occasion during which the injury occurs:

> (6) LIABILITY; PRIVATE PROPERTY. Subsection (2) does not limit the liability of a private property owner or of an employe or agent of a private property owner whose property is used for a

material fact regarding the applicability of the social guest exception to recreational immunity. We affirm the order denying summary judgment on that basis. Accordingly, we need not address whether the Pertzborns are entitled to recreational immunity notwithstanding the social guest exception.

recreational activity if any of the following conditions exist:

. . . .

 (d) The death or injury occurs on property owned by a private property owner to a social guest who has been expressly and individually invited by the private property owner for the specific occasion during which the death or injury occurs, if the death or injury occurs on any of the following:

. . . .

 2. Residential property.

Wis. Stat. § 895.52(6)(d). The term "owner" as it is used in the provision includes a person that "owns, leases, or occupies the property." Wis. Stat. § 895.52(1)(d)1.

¶ 41. The Pertzborns contest the applicability of the social guest exception on several grounds. First, they maintain that Kathleen Pertzborn was without the legal authority to extend an invitation that would trigger the social guest exception. Second, the Pertzborns argue that there was no express and individual invitation to trigger the exception. Third, they also contend that even if such invitation existed, it had expired by the time Christopher was injured and Kathleen had gone inside for supper.

¶ 42. We turn first to Kathleen's authority to extend an invitation under § 895.52(6)(d). While the Pertzborns make much of the fact that neither Diane nor Kenneth Pertzborn invited Christopher to their home to sled, that fact is not controlling. The only alleged invitation to be found in the summary judgment materials arose from Kathleen. The Pertzborns maintain that Kathleen had no authority to invite Christopher and trigger the social guest exception because she was merely eleven years old. Their posi-

tion is not supported by the statute. The statute requires only that an "owner" of the property invite the injured party. An "owner" under § 895.52(1)(d)1 includes an "occupant." The statute contains no age limitation, and we will not read one into the statute.

¶ 43. The Pertzborns additionally direct us to court of appeals precedent that defines an "occupant" as one who "has actual possession of the property." *Doane v. Helenville Mut. Ins. Co.*, 216 Wis. 2d 345, 351, 575 N.W.2d 734 (Ct. App. 1998). They maintain that Kathleen does not satisfy this requirement. The proffered definition of "occupant" was created to define the outer limits of the term in cases where the term's applicability was not necessarily apparent given the nature of the property. *See id.* at 348 (ice fishing shanty on lake); *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 487, 431 N.W.2d 696 (Ct. App. 1988) (fairgrounds). We believe that in the context of residential property the ordinary meaning of the term "occupant" encompasses one who resides on the property in question. It is not disputed that Kathleen is a resident of the Pertzborn home. She is therefore an occupant and is capable of extending an invitation that triggers the social guest exception.

¶ 44. The second challenge to the applicability of the social guest exception centers on whether there was an express and individual invitation extended to Christopher. We believe that Christopher's testimony regarding Kathleen's statements and conduct is sufficient to establish a question of fact as to whether Christopher was "expressly and individually invited" to the Pertzborns. Christopher's testimony establishes that the children went to the Pertzborns at Kathleen's

behest. He testified that Kathleen wanted to go to the Pertzborns from the Waters and that she "brought" Christopher to her house, saying "let's go over to my house or something." On summary judgment we are required to draw all reasonable inferences in favor of the non-moving party. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 56, 236 Wis. 2d 435, 613 N.W.2d 142.

¶ 45. The Pertzborns also argue that the social guest exception does not apply because if there was an invitation it was not one to sled at the Pertzborns. The Pertzborns' argument in this regard is not supported by the statutory language. Section § 895.52(6)(d) requires only that the injured party be "expressly and individually invited by the private property owner for the specific occasion during which the death or injury occurs."

¶ 46. The third challenge to the applicability of the social guest exception focuses on whether the invitation had expired by the time Christopher was injured. Under § 895.52(6)(d), for the social guest exception to apply the injured person must have been invited "for the specific occasion during which the death or injury occurs." It is implicit in this provision that an invitation does not create an open-ended exception to immunity unlimited by time or circumstance. Rather, the invitation, and therefore the exception, may cease. The Pertzborns contend that the specific occasion for which Christopher was invited onto their property ended when Kathleen went in for supper and that Christopher unilaterally decided to linger on the property.

■

¶ 47. Again, we conclude that the summary judgment materials present a disputed issue of fact.

Christopher testified that he was waiting on the property because he and Kathleen were to go to the schoolyard to sled following supper. A reasonable inference to draw from this testimony is that Kathleen understood he was waiting for her outside. While Diane Pertzborn testified that Kathleen told her that Christopher had gone home to tend the dogs, Christopher's testimony to the contrary creates a factual dispute on that matter. Thus, while Diane Pertzborn was unaware that Christopher remained on the property, there is an issue of fact as to whether the specific occasion of Kathleen's invitation included the time and circumstances of Christopher's injury, and therefore summary judgment is inappropriate.

¶ 48. Finally, we briefly address an argument raised in passing by the Pertzborns in their reply brief. The Pertzborns argue that the social guest exception does not apply because the injury did not occur *on* the Pertzborn property. Section 895.52(6)(d) provides an exception to immunity when the "death or injury occurs on the property owned by a private property owner." Wis. Stat. § 895.52(6)(d).

¶ 49. While we acknowledge that Christopher was not on the Pertzborn property when he was injured, we conclude that rendering the social guest exception inapplicable on this basis in this case would be an absurd and unreasonable result. *See DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985) ("We must interpret a statute in such a way as to avoid an absurd or unreasonable result."). Christopher was injured while engaged in the continuous act of sledding that began on the Pertzborn property. It was the act of sledding down the Pertzborns' hill that thrust Christopher a few feet beyond the Pertzborn property. It is this

continuous act, which began on the Pertzborn property and which propelled Christopher a few feet from that property, that compels our conclusion that § 895.52(6)(d) must be construed to allow for the extension of his social guest status to the injuries suffered by Christopher in Hilltop Drive.

¶ 50. Under the Pertzborns' reading of the statute, Christopher's social guest status would fall away simply because the force and speed generated when Christopher sledded down the Pertzborns' hill propelled him a few feet over their property line. Were we to accept this mechanistic reading of the statute, we would have to nuance the trajectory of Christopher's downhill descent in a manner that would ignore the laws of physics. Rather than subject the statute to such an unreasonable construction, we conclude that under the facts presented to us in this case the plaintiffs may proceed under the social guest exception to recreational immunity provided by § 895.52(6)(d).

### III

¶ 51. In sum, our answer to the certified issue is that the circuit court is precluded by statute from ordering separate trials before different juries on the issues of liability and damages arising from the same claim. We also conclude that because there are numerous disputed issues of material fact as to whether the § 895.52(6)(d) social guest exception to recreational immunity applies, the circuit court appropriately denied summary judgment. Accordingly, we reverse the circuit court's bifurcation order, affirm the order denying the motion for summary judgment, and remand the cause for further proceedings.

*By the Court.*—The orders of the circuit court are reversed in part, affirmed in part, and the cause is remanded for further proceedings.

¶ 52. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I join Part I of this opinion relating to the bifurcation of the issues of liability and damages. As to Part II, I agree that the plain meaning of the statute leads to an absurd result in this case. Statutory interpretation is necessary. In contrast, a plain meaning of the statute does not lead to an absurd result in *Urban v. Grasser*, 2001 WI 63, 243 Wis. 2d 673, 627 N.W.2d 511.

¶ 53. This case once again demonstrates that the recreational immunity statute needs legislative attention. *See* Wis. Stat. §§ 13.83(1)(c)1 and 13.93(2)(d) (1999–2000).