Cooper, Respondent, vs. Commercial Casualty Insurance Company, imp., Appellant.

*October 11—November 9, 1932.*

*James E. Coleman* of Milwaukee, for the appellant.

For the respondent there were briefs by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *Myron Stevens*.

FRITZ, J. This action was commenced against John Froelke and the Commercial Casualty Insurance Company to recover damages sustained by plaintiff by reason of the negligence, on October 18, 1930, of John Froelke while driving a Nash automobile. The complaint alleged that the Commercial Casualty Insurance Company had issued a policy to John Froelke, and "that by reason thereof" the insurer "is liable to the plaintiff to the extent named in the policy." John Froelke answered by denying liability to plaintiff. He did not file any cross-complaint nor seek any relief against the insurance company. In its answer the insurer alleged that the policy, which it had issued on November 16, 1929, to John Froelke in the state of Illinois, covered the operation of a Studebaker automobile and provided that it did not cover any liability while driving any other automobile, and that "said contract did not cover or insure" the operation of the automobile which John Froelke was driving at the time of the accident, and that therefore the insurer is an improper party defendant to this action. Manifestly, the defense thus alleged constitutes a plea in bar and not merely a plea in abatement. The insurer further alleged in its answer that the policy had a "no-action clause" which provided that no action shall lie against the insurer unless it be brought by the assured for loss actually sustained and paid in money by him after actual trial of the issue; and that as no judgment has been obtained against the assured, this action against the insurer is prematurely brought.

Those allegations constitute merely a plea in abatement, and as the no-action clause, upon which that plea was based, was similar in effect to the clause which was under consideration in *Heinzen v. Underwriters Cas. Co.* 208 Wis. 512, 243 N. W. 448, a motion to overrule that plea would have been sufficient to successfully challenge it. However, as to those defenses it was stipulated that the issues raised by the in-

surer's plea in abatement and answer should be tried prior to and separate and apart from the issue in the case as to the liability of John Froelke to the plaintiff. An order was entered for a trial in accordance with that stipulation, and upon findings and conclusions made on that trial an interlocutory judgment was entered adjudging that if judgment is rendered herein against John Froelke, such judgment should also be rendered against the insurer for the amount thereof, but not to exceed the amount of the coverage of the policy.

The practice and procedure adopted by mutual consent in this action is unusual and questionable. If the adjudication which the parties and the court have designated as an interlocutory judgment overruled solely the plea in abatement, it would after all be merely an order overruling such a plea, and as such an order it would not be an appealable order. *Cottrill v. Pinkerton,* 206 Wis. 218, 239 N. W. 442. On the other hand, if the adjudication which was made was properly entered as an interlocutory judgment, then an appeal was permissible under sec. 274.09, Stats. However, as appears from the special verdict and the court's findings and conclusions after the trial pursuant to the stipulation, the only issues decided were those which were involved in the ultimate determination that the insurer had contracted with John Froelke to cover his operation of the Nash automobile as equally as his policy had covered the operation of the Studebaker car. In that respect the court's finding and interlocutory judgment substantially disposed of the merits of the insurer's answer with the exception of the issues of fact and law which were still to be decided in respect to the primary liability, because of his alleged negligence, of John Froelke to the plaintiff. In thus first making a finding or decision substantially disposing of the merits peculiar to the separate defense of the insurer, but leaving an issue of fact still to be decided in order to fully determine the rights of the parties,

the procedure may be considered within the following portions of the provisions of sec. 270.54, Stats., to wit:

"In case of a finding or decision substantially disposing of the merits, but leaving an account to be taken, or issue of fact to be decided . . . in order to fully determine the rights of the parties, an interlocutory judgment may be made, disposing of all issues covered by the finding or decision, and reserving further questions until the report, verdict or subsequent finding."

If so, the procedure which culminated in the interlocutory judgment was permissible, at least in so far as the trial and that judgment dispose of the merits of the special defenses asserted by the insurer. However, the piecemeal trial of separable issues of fact, so as to have separate trials and interlocutory adjudications as to such separable issues, even though there is thereby a substantial disposal of the merits, should be undertaken only with great caution, even when requested upon stipulations by the parties, so as to avoid complicating and delaying the disposition of litigation and unduly increasing the cost and expense thereof to all concerned.

The interlocutory judgment as to the insurer's liability was based on the proposition that the coverage afforded by a policy issued in November, 1929, covering John Froelke's operation of a Studebaker automobile had been properly and effectively altered in August, 1930, so as to extend to a Nash automobile, which he was driving when the collision occurred in October, 1930. The evidence established the following facts: The parties resided and all transactions occurred in Illinois. John Froelke obtained the policy in November, 1929, through his brother Philip, who collected the premium, and, after deducting twenty per cent. as commission, forwarded the balance to the Leonard Agency, which was a duly appointed agent of the Commercial Casualty Insurance Company. Philip Froelke never dealt directly with that insurance company, and he had never been appointed as one of its

agents, directly or indirectly. In August, 1930, John exchanged his Studebaker automobile for a Nash automobile and notified his brother Philip to transfer the coverage to the new automobile. Philip testified that he wrote a letter regarding the change, but that he does not know whether he ever mailed it. Later he told John that he had mailed it and was expecting a new policy. No such notice was ever received by the Leonard Agency or the insurer, and no new policy, indorsement, or rider for any change as to the automobile to which the coverage extended was ever issued in the manner prescribed by the policy or delivered to either Philip or John Froelke. As to the manner of making a change in the policy, there was a provision that—

"No condition or provision of this policy shall be waived or altered except by written indorsement attached hereto and signed by the president, a vice-president, secretary, or treasurer of the company; nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this contract. Upon the acceptance of this policy the assured agrees that its terms embody all agreements then existing between the assured and the company or any of its agents relating to the insurance described herein."

The policy also provided:

"No person shall be deemed a representative of the company unless such person is authorized in writing as such representative by the president, a vice-president, secretary, or treasurer of the company."

The court found and concluded (1) that Philip Froelke was acting as the agent of the insurer in receiving the notice as to the change in the automobiles, and in representing that the requested change in the policy had been effected; (2) that Philip Froelke in his transactions with John Froelke in relation to the insurance policy was acting within the scope of his authority as such agent of the insurer; (3) that John Froelke

relied on Philip Froelke's advice that the change had been taken care of, and that the insurer was estopped to assert that the policy did not cover John Froelke's operation of the Nash automobile.

We find no support in the evidence for the finding that Philip Froelke was the agent or authorized to act as the agent of the insurer in any respect. There is no proof that he had ever been appointed as an agent by the insurer or authorized by it to solicit or write any insurance for it, or that he had acted in that capacity, with its knowledge or acquiescence, under such circumstances that authority might be implied to act for the insurer in relation to the policy in question or any other transaction in which it was interested or concerned. Under the circumstances Philip Froelke could of course be considered the agent of his brother in procuring and delivering the policy in question, but the mere fact that the Leonard Agency delivered the policy which it issued as the agent of the insurer to John Froelke through Philip Froelke, and allowed the latter to take a commission out of the premium, does not change the character in which Philip acted so far as the insurer is concerned. *Lycoming Fire Ins. Co. v. Rubin,* 79 Ill. 402; *Merchants Ins. Co. v. Union Ins. Co.* 162 Ill. 173, 44 N. E. 409; *Morris & Co. v. Starkweather & Shepley, Inc.* 186 Ill. App. 59. In the absence of proof of facts or circumstances which otherwise establish the existence of express or implied authority on the part of Philip Froelke to act for the insurer, the respondent relies upon the presumption as to agency afforded by sec. 209.05, Wis. Stats., when the person in question has done one or more of the acts in relation to the insurance which are referred to in that section. However, that statute is not applicable to the Illinois transactions which are involved in this case. Since the enactment of sec. 328.01, Stats., it is not permissible to assume that the statutory law of Illinois is the same as the statutes of this state. On the contrary, the courts of this state are required

by sec. 328.01, Stats., to take judicial notice of the statutes of Illinois, and as it appears that there is no equivalent provision in that state to sec. 209.05, Wis. Stats., there is no basis in law for indulging in the presumptions prescribed by that statute. Consequently, the liability of the insurer was limited to its coverage under the policy as it was issued.

As the vehicle involved was specifically described in item 7 of the policy as a "Studebaker Dictator Sedan, Factory No. S1398996 MEUW 36036, Model or year No. 1928," the plaintiff was not entitled to an adjudication that the insurer was liable for such amount as he may be entitled to recover from John Froelke because of his negligent operation of a Nash automobile.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint as to the Commercial Casualty Insurance Company.