William ZAWISTOWSKI, Plaintiff-Appellant,†

v.

Harold KISSINGER, Defendant-Respondent.

Court of Appeals

*No. 90-1553. Submitted on briefs December 17, 1990.—Decided January 15, 1991.*

(Also reported in 466 N.W.2d 664.)

†Petition to review denied.

293

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William Schroeder* of *Sommer, Olk & Schroeder* of Rhinelander.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John F. O'Melia, Jr.* and *Lawrence J. Wiesneske* of *O'Melia, Schiek & McEldowney, S.C.* of Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   William Zawistowski appeals a judgment entered after a jury found that Harold Kissinger did not make the statements alleged in Zawistowski's defamation action. Zawistowski contends that the trial court erred by: (1) ordering bifurcation of the trial to first address the issue of whether Kissinger made the alleged statements before proceeding to trial on the issue of defamation; (2) dismissing his cause of action for libel based on statements published in a newspaper because Kissinger was not afforded notice of the intended action as required under sec. 895.05(2), Stats.; (3) allowing jurors to hear a tape recording representing only a portion of the meeting at which the alleged defamation occurred; (4) refusing to allow testimony concerning Kissinger's "habit or custom" of referring to Zawistowski as a polluter; and (5) ordering Zawistowski to pay Kissinger's costs for depositions that were not necessary to the trial.

We conclude that a trial court has inherent discretion to order separate trials of disputed issues that form the basis for a single cause of action and that the trial court here reasonably exercised its discretion by ordering the bifurcation of the defamation trial. Because we

resolve the remaining issues against Zawistowski, the decision of the trial court is affirmed.

Zawistowski operates a cranberry marsh adjacent to Big Sissabagama Lake in Sawyer County. Kissinger is a member of the Big Sissabagama Lake Shoreowners Association. The shoreowners association has been concerned for some time about the effect of the cranberry marsh on the lake's water quality. Two sets of statements allegedly made by Kissinger are at issue on appeal: Zawistowski first claims that an article published in the Four Seasons newspaper in January of 1985 incorporating statements attributed to Kissinger was libelous, and also that Kissinger's oral statements at the annual meeting of the shoreowners association in May of 1985 were defamatory. The trial court dismissed Zawistowski's libel claim because he failed to give Kissinger notice of the intended action under sec. 895.05(2), Stats.

With respect to the remaining defamation claims, the court ordered that the trial be bifurcated, with its initial focus on whether Kissinger actually made the alleged statements prior to a full trial on the defamation issue. The court noted:

> I believe bifurcation is appropriate in this particular case in that the trial could be . . . very lengthy . . . [including the] potential rehash of the history of the cranberry industry as to what substances are or are not going into the ground water or the water of the lakes and so forth . . . .. it seems to me that for trial economy or for fairness if in fact those statements were not made . . . one should not have to get to the complex issue as far as financial background and/or further testimony.
>
> . . ..
>
> I think this is one of those rare records where I concede that on the record bifurcation is appropriate.

I believe this is clearly within the [purview] of what was intended as possible use of bifurcation under Wisconsin Statute 805.05(2).

The court found that this bifurcation would not be an undue burden on either party, and would not confuse the jury.

Prior to trial, Zawistowski asked the court to prohibit Kissinger from playing a tape recording made surreptitiously by Zawistowski's own private investigator during the shoreowners association meeting. The court denied the motion, and the tape was played at trial over Zawistowski's objection. The association meeting lasted over two hours; the tape recording, however, represented only thirty to thirty-one minutes of that meeting. Edward Hill, the private investigator, testified that he activated the tape recorder when the meeting started. He further testified that Kissinger continued to speak at the meeting after the tape was exhausted. Hill described for the jury his version of Kissinger's untaped comments.

Kissinger testified at trial as follows:

Q. Did you speak the entire time that meeting was going on, Mr. Kissinger?

A. Absolutely not.

Q. Approximately how long did you speak that day, Mr. Kissinger?

A. I would give a rough approximation of thirty, forty minutes.

Q. Now you have listened to that tape Mr. Hill took, did you not?

A. Yes.

Q. When that tape concludes, "Before I sign off, let me look at my notes," did you address the group any further?

A. To the best of my memory, no.

Five other witnesses testified that Kissinger spoke only part of the time at the meeting, and that he did not make the allegedly defamatory statements.

Zawistowski attempted at trial to introduce evidence that since 1983 Kissinger had frequently accused him of polluting the lake with his cranberry marsh operation. The trial court excluded the evidence on the ground that it was not probative of Kissinger's specific statements at the shoreowners association meeting.

Zawistowski first contends that the trial court erred by ordering bifurcation of the trial to address the issue of whether Kissinger made the alleged statements before proceeding to trial on the issue of defamation. Zawistowski's claim requires that we interpret the language of a number of procedural statutes. The construction of a statute or the application of a statute to a particular set of facts is a question of law that this court reviews de novo. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). In construing a statute, the primary source is the language of the statute itself. *Riley v. Doe,* 152 Wis. 2d 766, 769, 449 N.W.2d 83, 84 (Ct. App. 1989).

In Zawistowski's view, sec. 805.05(2), Stats., empowers the court to order separate trials of claims, but not of individual issues underlying these claims. Section 805.05(2) provides:

> **Separate trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy, or pursuant to s. 803.04(2)(b), may order a separate trial of any claim, cross-claim, counterclaim or 3rd party claim, or of any number of claims, always preserving

inviolate the right of trial in the mode to which the parties are entitled.

We agree that the plain language of sec. 805.05(2) does not *authorize* bifurcating individual issues for trial, but neither does it prohibit the trial court from taking such an action.[1]

Zawistowski argues that the only exception to what he perceives to be a ban on separate trial of issues is found in sec. 803.04(2)(b), Stats. That section provides:

> If an insurer is made a party defendant pursuant to this section and it appears at any time before or during the trial that there is or may be a cross issue between the insurer and the insured or any issue between any other person and the insurer involving the question of the insurer's liability if judgment should be rendered against the insured, the court may, upon motion of any defendant in the action, cause the person who may be liable upon such cross issue to be made a party defendant to the action and all the issues involved in the controversy determined in the trial of the action or any 3rd party may be impleaded as provided in s. 803.05. Nothing herein contained shall be construed as prohibiting the trial court from directing and conducting separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief and on the issue of whether the insurance policy in question affords coverage. Any party may move for such separate trials and if the court orders separate trials it shall specify in its

---

[1] The 1974 Judicial Council Committee's Note to sec. 805.05(2), as reprinted in Wis. Stat. Ann. (West 1977), does not undermine our conclusion. It states: "This section is based in large part on Federal Rule 42. Unlike Federal Rule 42, sub. (2) does not *permit* bifurcation of issues, but only separate trial of discrete claims." (Emphasis added.)

299

order the sequence in which such trials shall be conducted.

We do not read this section as authorizing separate trials on issues of liability or coverage under an insurance contract. Instead, this section authorizes joinder of third parties in certain actions. As part of that authorization, it states that "[n]othing herein contained shall be construed as *prohibiting* [separate trials of certain issues]." (Emphasis added.)[2]

We conclude that a trial court's authorization to bifurcate issues for trial is derived from the language of sec. 906.11, Stats., which provides in part:

**(1) Control by judge.** The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment.

This section grants the trial court inherent discretion to bifurcate issues for reasons of judicial economy. We have in the past remanded cases for bifurcated trials on separate issues. *See Lange v. Bartlett*, 121 Wis. 2d 599, 605, 360 N.W.2d 702, 705 (Ct. App. 1984) ("On remand, a bifurcated trial should be held. Following testimony as to whether a [partnership] wind-up or a continuation occurred, the court should make its findings of fact. If the trial court finds that a continuation has occurred, then the second part of the trial should focus on the

---

[2]*But cf., Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 523, 385 N.W.2d 171, 183 (1986) ("Section 803.04(2)(b) authorizes the trial court to sever and try issues separately, at its discretion.").

value of the partnership assets . . ..").[3]

Such discretion, of course, is not unfettered. For example, in relation to separate trials on claims, sec. 805.05(2), Stats., provides that the trial court may order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy . . . *always preserving inviolate the right of trial in the mode to which the parties are entitled.*" (Emphasis added.) Our supreme court has cautioned that:

> [T]he piecemeal trial of separable issues of fact . . . even though there is thereby a substantial disposal of the merits, should be undertaken only with great caution, even when requested upon stipulations by the parties, so as to avoid complicating and delaying the disposition of litigation and unduly increasing the cost and expense thereof to all concerned.

*Cooper v. Commercial Cas. Ins. Co.*, 209 Wis. 314, 318, 245 N.W. 154, 155 (1932).

Among the factors that a court should consider are potential prejudice to the parties, the complexity of the issues and potential to confuse the jury, and the relative convenience, economy or delay that might result. *See, e.g., In re Bendectin Litigation*, 857 F.2d 290, 306–08 (6th Cir. 1988), *cert. denied sub nom., Hoffman v. Mer-*

---

[3]*See also Micro-Managers, Inc. v. Gregory,* 147 Wis. 2d 500, 505, 434 N.W.2d 97, 99 (Ct. App. 1988) (a scheduling order stipulated to by the parties bifurcated a contract claim "because of the complexity of the issues"); *Brogan v. Industrial Cas. Ins. Co.,* 132 Wis. 2d 229, 232–33, 392 N.W.2d 439, 441 (Ct. App. 1986) (on breach of contract claim, trial to court on liability issue preceded jury trial on damages).

*rell Dow Pharmaceuticals,* 109 S. Ct. 788 (1989). We will sustain a discretionary act if the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).

We agree with the trial court that this is one of the instances where a trial should be bifurcated to first determine whether the alleged statements were made. Pretrial conferences and submissions exposed a significant dispute as to this initial issue. A trial of the defamation issue, including an examination of the truth or falsity of the alleged statements, would have involved a time-consuming and technical examination of the environmental impact of cranberry marshes on lake waters. This lengthy testimony would be unnecessary were the jury to determine that the statements were never made. The record supports the court's determination that this bifurcation would not prejudice the parties or unduly confuse the jury. Had Zawistowski proved to the jury's satisfaction that Kissinger made the alleged statements, he would have been entitled to a full trial on the remaining defamation issues.

Next, Zawistowski argues that it was error to dismiss his cause of action for libel based on Kissinger's published statements. Zawistowski contends that the notice requirements of sec. 895.05(2), Stats.,[4] apply only

---

[4]Section 895.05(2) provides:

> Before any civil action shall be commenced on account of any libelous publication in any newspaper, magazine or periodical, the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing specify-

to media defendants, and, further, that because Kissinger's published statements were in fact defamatory, dismissal of the libel claim was based on an erroneous view of the law.

■

We have twice addressed the application of sec. 895.05(2), Stats., to nonmedia defendants. In *Hucko v. Jos. Schlitz Brewing Co.,* 100 Wis. 2d 372, 377–81, 302 N.W.2d 68, 72–74 (Ct. App. 1981), we held that the statutory notice requirements applied to both media and nonmedia defendants. That result was recently reaffirmed in *Super Valu Stores v. D-Mart Food Stores,* 146 Wis. 2d 568, 579, 431 N.W.2d 721, 726 (Ct. App. 1988). As in *Super Valu,* we see no reason to depart from the established rule in this case. Because we conclude that the trial court did not err by dismissing Zawistowski's libel claim for failure to give the required statutory notice, we do not address the issue of whether Kissinger's published statements were capable of conveying a defamatory meaning.

ing the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The first issue published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as his statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and material in mitigation of actual damages to the extent the correction published does so mitigate them.

Zawistowski also contends that the trial court erred by admitting a thirty- to thirty-five-minute tape recording of statements made at a meeting of the shoreowners association that lasted more than two hours. The admission of evidence at trial is a matter within the discretion of the trial court. *In re S.S.K.*, 143 Wis. 2d 603, 619, 422 N.W.2d 450, 456 (Ct. App. 1988). The trial court here did not abuse its discretion by admitting the tape recording while at the same time allowing Zawistowski's investigator to testify to the conditions as to subsequent statements made at the meeting. The jury was informed that the meeting lasted much longer than the taped segment. Five other witnesses testified that Kissinger spoke at the beginning of the meeting and not throughout the course of the meeting. They further testified that he did not make any of the alleged defamatory statements. They indicated that they understood that Hill's testimony conflicted with theirs, and reaffirmed their testimony after listening to the contents of the taped material.

Next, Zawistowski claims that the trial court erroneously refused to allow testimony concerning Kissinger's "habit or custom" of referring to Zawistowski as a polluter. On appeal, Zawistowski contends that evidence of what he terms Kissinger's "course of conduct" in making statements about him should have been admitted under sec. 904.06, Stats.,[5] which governs the admissibility of evidence of habit or routine practice.

---

[5]Section 904.06 provides:

**Habit; routine practice. (1)** Admissibility. Except as provided in s. 972.11(2), evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that

Kissinger, in response, argues that the evidence was character evidence and impermissible under sec. 904.04(2).[6] The determination that the probative value of evidence is outweighed by its prejudicial effect is committed to the discretion of the trial court. *State v. Hinz,* 121 Wis. 2d 282, 285, 360 N.W.2d 56, 59 (Ct. App. 1984). We conclude that the trial court reasonably exercised its discretion by ruling that this "other act" evidence was not sufficiently probative of the precise statements Kissinger allegedly made at the meeting to outweigh its prejudicial effect, or to justify the allotment of additional time for its presentation.

Finally, Zawistowski seeks to avoid statutory costs imposed pursuant to sec. 814.04(2), Stats.,[7] on the grounds that Kissinger's costs were incurred for depositions that were not "necessary" to the trial. These depositions addressed the truth or falsity of the claimed lake pollution, and did not relate to the primary issue in the first portion of the bifurcated trial, whether Kissinger in fact made the alleged statements. In Zawistowski's view, once the trial was bifurcated the only depositions that were "necessary" within the meaning of sec. 814.04, were

the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

[6]Section 904.04(2) provides:

**(2) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[7]Section 814.04(2) provides for recovery of "[a]ll the necessary disbursements and fees allowed by law [to include costs of] depositions including copies . . .."

those addressing the narrow issue of whether Kissinger in fact made the alleged statements.

We reject Zawistowski's argument on two grounds. First, the record indicates that the trial court was informed that the disputed depositions were taken at the request of Zawistowski's counsel. Zawistowski does not dispute this assertion. Second, we conclude that a bifurcated trial would not streamline the administration of justice were all discovery halted on the central cause of action during the determination of the threshold issue. The depositions taken here would have been "necessary" at the second stage of the trial had Kissinger not prevailed at the first stage. The trial court did not abuse its discretion in ordering Zawistowski to pay the costs of these depositions.

*By the Court.*—Judgment affirmed.