Bradley DeBraska, Sr., Plaintiff-Respondent,†

v.

Quad Graphics, Inc., Milwaukee Magazine and Kurt Chandler, Defendants-Appellants.

Court of Appeals

*No. 2007AP2931. Oral argument November 17, 2008.*
*—Decided January 21, 2009.*

2009 WI App 23

(Also reported in 763 N.W.2d 219.)

† Petition to review filed.

386

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert J. Dreps* and *Karen A. Waple* of *Godfrey & Kahn, S.C.*, of Madison, with oral argument by Robert J. Dreps.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John F. Fuchs* and *Rebecca D. Boyle* of *Fuchs & Boyle, S.C.*, of Milwaukee, with oral argument by John F. Fuchs.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. Quad Graphics, Inc., *Milwaukee Magazine,* and Kurt Chandler (unless otherwise specified, collectively referred to as Quad), appeal from an order denying their motion for judgment on the pleadings.[1] Quad filed a petition for leave to appeal the order, which we granted.

¶ 2. Quad argues that Bradley DeBraska, Sr.'s retraction demand failed to satisfy the conditions precedent to commencing an action pursuant to WIS. STAT. § 895.05(2) (2005–06).[2] We agree, based on our conclusion that the retraction demand did not include "a statement of what are claimed to be the true facts." *See id.* Consequently, we reverse the trial court's order and

---

[1] The appellants assert that Quad/Creative, LLC, a wholly-owned subsidiary of Quad Graphics, Inc., is the corporate entity responsible for *Milwaukee Magazine* and the magazine's contents. We will refer to the corporate defendant as Quad for purposes of this appeal.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

remand with directions to the trial court to enter judgment on the pleadings dismissing DeBraska's complaint with prejudice.

## I. BACKGROUND.

¶ 3.   This appeal arises out of a lawsuit filed by DeBraska, former president of the Milwaukee Police Association, related to an article written by Chandler, which appeared in *Milwaukee Magazine* in July 2006. The article, entitled "See No Evil:  Until the police union stops protecting bad cops, we may never heal the wound to the community caused by the Frank Jude case," discussed, in relevant part, actions purportedly taken by DeBraska in the aftermath of what is known in Milwaukee as the "Frank Jude beating."

¶ 4.   The opening paragraphs of the article, which DeBraska contends are false, read:

> In the predawn hours of October 24, 2004, as a police van took Frank Jude Jr. to a hospital, Bradley DeBraska crept around the crime scene in Bay View with a finger to his lips, hushing up the off-duty cops who would later be charged with beating Jude to a pulp.

> At one point, DeBraska, then head of the police union, yelled at the officers to keep their mouths shut and hustled them indoors, where, according to Police Chief Nan Hegerty, he instructed them to lock out investigators and change their bloody clothes.

> The Milwaukee Police Association has long walked a fine line between protecting its own and hampering investigations of police criminality . . . .[3]

(Footnote added.)

---

[3] Although these paragraphs are referenced in DeBraska's complaint as forming the basis for his lawsuit, in his briefing, DeBraska does not mention the last sentence (i.e., "The Mil-

¶ 5. In response to the article, DeBraska hand-delivered to Chandler two letters dated August 1, 2006. One was addressed to Chandler directly, and copied to the chief of police at the time, Nannette Hegerty. The other was addressed to Chief Hegerty and copied to Chandler.[4]

¶ 6. The letter addressed to Chandler read:

Dear Senior Editor,

Subsequent to reading the "See No Evil" article you authored in the July issue of the Milwaukee Magazine I asked myself a basic question, "Did Mr. Chandler take reasonable and rudimentary care in ascertaining information necessary to allege a private citizen had engaged in criminal behavior prior to publishing".

You had at your disposal if you chose to gain access, the entire criminal investigation, the internal investigation that was made public, the criminal proceedings that were publicly aired, and witnesses that accompa-

waukee Police Association has long walked a fine line between protecting its own and hampering investigations of police criminality.").

[4] The letter addressed to Chief Hegerty was not attached to DeBraska's pleadings. *See* WIS. STAT. § 802.04(3) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Instead, it was attached to DeBraska's brief in opposition to Quad's motion for judgment on the pleadings. Pursuant to WIS. STAT. § 802.06(3), this would not have been properly before the trial court. *See id.* ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.") Yet, for reasons that are unclear from the record, the trial court considered the two letters in conjunction and neither party contends that such consideration was in error, even though the motion was not treated as one for summary judgment.

nied my presence on October 24th, 2004. All of the information available to you would have certainly provided enough factual basis [sic] that I in fact did not engage in the criminal misconduct you allege in your article. Further, if there was reason to believe I did engage as your article points out the criminal investigators would have an obligation to arrest me and District Attorney E. Michael McCann would've had an obligation to issue criminal charges.

On behalf of the Milwaukee Magazine you published allegations that I engaged in criminal misconduct. These allegations are reckless by not taking reasonable and rudimentary care in ascertaining the truth. You have intentionally slandered my reputation without a scintilla of evidence but to advance a political agenda of a third party. The harm is substantial therefore; I respectfully request a full retraction and apology no less in size than your original article "See No Evil".

Under separate cover I requested the Chief of Police to provide you with truthful and accurate information to assist in your retraction and apology if you so choose. Thank you in advance for your cooperation.

(Punctuation as it appears in original.)

¶ 7. In the letter addressed to Chief Hegerty, DeBraska wrote:

Dear Chief Hegerty,

The Milwaukee Magazine published in its July Edition an article entitled "See No Evil" or the "Endgame". Your comments allege certain conduct perpetrated by myself during the criminal investigation on Ellen Street on October 24TH, 2004. Your statements further suggest my motives in this alleged conduct were to hamper the investigation of police criminality.

On the morning in question my involvement from the beginning was at best minimal due primarily to the nature of the investigation, that being criminal. During the entire engagement I was accompanied by Attorney Martin Kohler, Mr. William Ward, and Mr. James Miller, all fine people of the highest integrity. You indicate through your statements that I yelled at officers to keep their mouths shut, hustled the officers indoors, instructed the officers to lock out investigators and change their bloody clothes. There is little doubt you, as Chief, have thoroughly read both the Internal and Criminal investigatory files in conjunction with telephonic communications from the lead investigator from the scene on the night in question. I feel comfortable in suggesting that if your comments were in any way factual my arrest would have taken place or a reasonable question on your part would have been, 'Why wasn't DeBraska arrested?'

As a private citizen since April 1ST, 2005, citizenship that you were clearly aware of when you chose to make these intentionally harmful comments, I don't believe you have a privilege to allege I engaged in criminal conduct and destroy my reputation publicly. Your comments were unfounded, slanderous and factually wrong. If I had engaged in the conduct you allege, the people assisting me would have certainly walked away. What is equally disturbing is your Public Information Officer[']s comment in response to my inquiry. "Are the Chief[']s comments in quotes". This, in response to my inquiry as to whether the statements are attributable to you. Suggesting somehow that if statements made by you are not in quotations, the pulpit afforded the position of Chief of Police can be used to defame a private citizen by alleging criminal misconduct. Incidentally, when Mr. Frank Jude was transported to the hospital I was sleeping, not 'creeping around the scene on Ellen Street holding a finger to my lips hushing up the off duty Police Officers'.

393

A number of people have asked me to seek an apology from you and my response has been the same, I'm sure that when the Chief reads the article she will pick up the phone and call to tell me that those are not my comments and my statements have been taken completely out of context by the author. My perception of your integrity was misplaced and I should not have to endure this type of behavior. What ever [sic] type of political gain you received at my expense I pray is short lived.

Under separate cover I am requesting Mr. Kurt Chandler, Senior Editor for the Milwaukee Magazine and author of the "See No Evil" article for a full retraction and apology. My request to you is simple, if Mr. Chandler chooses to print a retraction and apology, that you supply him with factual and truthful information. And please do not use the mere fact of an ongoing investigation to not disclose the factual truth; the investigation did not seem to prohibit giving false statements in the first interview.

(Punctuation as it appears in original.) As stated, Chandler was copied on this correspondence.

¶ 8. Chief Hegerty's attorney then sent a letter, dated August 29, 2006, addressed to the president and publisher of *Milwaukee Magazine* along with Chandler and another editor.[5] The letter read:

Please be advised that I have been retained by Chief Nannette Hegerty [in] reference [to] the "See No Evil" article published in the July 2006 issue. In that article, you identified the Chief as a source for your report of the conduct of Bradley DeBraska. The allegations as to DeBraska were false, and Chief Hegerty was not a source for that story. Chief Hegerty requests that you

---

[5] The attorney who wrote the August 29, 2006 letter on behalf of Chief Hegerty is the same attorney who represents DeBraska in the instant lawsuit.

394

print a retraction, indicating that she was not a source, indicating the true source of any information printed, and which includes that truth of what may have occurred as to Bradley DeBraska. The retraction is requested to be in your next publication, and with equal prominence as the initial story.

¶ 9. In its October 2006 issue, *Milwaukee Magazine* published a retraction, which read:

**RETRACTION**
July's Endgame, "See No Evil," made two incorrect statements about former Milwaukee Police Association President Bradley DeBraska. DeBraska did not tell off-duty police to keep quiet at the Frank Jude Jr. crime scene. Nor did DeBraska instruct police at the scene to go indoors, change clothes and lock out investigators, a statement erroneously attributed to Police Chief Hegerty. We apologize for the errors.

(Bolding in original.)

¶ 10. DeBraska filed suit on April 27, 2007, alleging the *Milwaukee Magazine* article was defamatory, contending that the retraction did not comply with WIS. STAT. § 895.05(2), and seeking compensatory and punitive damages. In his complaint, he asserted that the article was false and that he "was not even present at the scene as alleged and stated in the article. He did not do or engage in any of the actions or activities as stated in the article. Milwaukee Police Chief Nan Hegerty was not the source of information for the article."

¶ 11. Quad answered DeBraska's complaint and filed a motion for judgment on the pleadings, which the trial court denied. *See* WIS. STAT. § 802.06(3).[6] We granted Quad's petition for leave to appeal from that

[6] WISCONSIN STAT. § 802.06(3) states, in relevant part:

non-final order. Additional facts are provided in the remainder of this opinion as needed.

## II. ANALYSIS.

### A. Standard of Review.

¶ 12.    Whether a claim is capable of surviving a judgment on the pleadings is a question of law, which we review *de novo. See Freedom from Religion Found., Inc. v. Thompson,* 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991). "A judgment on the pleadings is essentially a summary judgment minus affidavits and other supporting documents. We first examine the complaint to determine whether a claim has been stated. If so, we then look to the responsive pleading to ascertain whether a material factual issue exists." *Jares v. Ullrich,* 2003 WI App 156, ¶ 8, 266 Wis. 2d 322, 667 N.W.2d 843.

¶ 13.    To resolve this appeal, we must interpret and apply WIS. STAT. § 895.05(2) to the undisputed facts.

Statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, our inquiry is ordinarily at an end. When statutory language is ambiguous, however, we may consult "extrinsic

---

(3) JUDGMENT ON THE PLEADINGS. After issue is joined between all parties but within time so as not to delay the trial, any party may move for judgment on the pleadings . . . . If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by s. 802.08.

sources" such as legislative history. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. In addition, we must interpret statutory language to avoid absurd or unreasonable results.

*Williams v. American Transmission Co.*, 2007 WI App 246, ¶ 5, 306 Wis. 2d 181, 742 N.W.2d 882 (citations omitted).

## B. Compliance with WIS. STAT. § 895.05(2).

¶ 14.    WISCONSIN STAT. § 895.05(2) states:

(2) Before any civil action shall be commenced on account of any libelous publication in any newspaper, magazine or periodical, the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The first issue published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as the libeled person's statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual

397

damages, as well as being competent and material in mitigation of actual damages to the extent the correction published does so mitigate them.

Neither party argues that the statute is ambiguous; thus, our review centers on the statute's language. *See Williams*, 306 Wis. 2d 181, ¶ 5.

¶ 15. When broken down, WIS. STAT. § 895.05(2) contains five requirements for valid pre-suit notice. It must:

(1) be in writing;

(2) be directed to those alleged to be responsible or liable;

(3) specify the article and statements therein which are claimed to be false and defamatory;

(4) contain a statement of what are claimed to be the true facts; and

(5) be given before any civil action is commenced.[7]

*Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 381, 302 N.W.2d 68 (Ct. App. 1981) (footnote in *Hucko*; italics deleted). Quad contends that DeBraska failed to satisfy the third and fourth requirements.

¶ 16. As an initial matter, the parties dispute whether strict compliance with WIS. STAT. § 895.05(2) is mandated. Even accepting DeBraska's position that

---

[7] "The person giving notice may also include a reference to sources from which the true facts may be ascertained with definiteness and certainty." *Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 381 n.7, 302 N.W.2d 68 (Ct. App. 1981).

substantial compliance is all that is required, an issue we need not decide for purposes of this appeal, we nevertheless conclude that his notice was insufficient given the absence of a statement of true facts. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

¶ 17. Rather than including "a statement of what are claimed to be the true facts," *see* WIS. STAT. § 895.05(2), in his letter to Chandler, DeBraska relied on Chief Hegerty to satisfy this element for him. He wrote: "Under separate cover I requested the Chief of Police to provide you with truthful and accurate information to assist in your retraction and apology if you so choose." Quad argues that a third party could not satisfy this requirement for DeBraska. We agree and further note that DeBraska does not argue to the contrary. Moreover, even if Chief Hegerty could have satisfied this requirement for DeBraska, the letter sent by her attorney likewise failed to state the true facts. Chief Hegerty's attorney simply claimed the allegations as to DeBraska were false, stating, in relevant part:

> The allegations as to DeBraska were false, and Chief Hegerty was not a source for that story. Chief Hegerty requests that you print a retraction, indicating that she was not a source, indicating the true source of any information printed, and which includes that truth of what may have occurred as to Bradley DeBraska.

¶ 18. WISCONSIN STAT. § 895.05(2) provides that an opportunity to correct the libelous matter "shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts." The statute also contains an optional

provision: "The notice *may* also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty." *Id.* (emphasis added). This optional provision does not nullify the requirement that the notice "contain a statement of what are claimed to be the true facts." *See Hucko*, 100 Wis. 2d at 381.

¶ 19. Even reading the notice to Chandler in conjunction with the letter to Chief Hegerty, we conclude it is insufficient to satisfy the "true facts" requirement. In his letter to Chandler, in addition to referencing his request that Chief Hegerty provide Chandler with truthful and accurate information, there was a blanket denial: "I in fact did not engage in the criminal misconduct you allege in your article." In his letter to Chief Hegerty, DeBraska described his involvement in the events surrounding the Frank Jude beating as "minimal" and specifically claimed that he was asleep when Jude was transported to the hospital:

> On the morning in question my involvement from the beginning was at best minimal due primarily to the nature of the investigation, that being criminal. During the entire engagement I was accompanied by Attorney Martin Kohler, Mr. William Ward, and Mr. James Miller, all fine people of the highest integrity . . . .
>
> . . . Incidentally, when Mr. Frank Jude was transported to the hospital I was sleeping, not 'creeping around the scene on Ellen Street holding a finger to my lips hushing up the off duty Police Officers'.

(Punctuation as it appears in original.) Quad asserts that "[n]one of these statements, other than possibly by implication [pinpointing] the precise timing of DeBraska's arrival at the scene, contradicts any stated facts in the column."

400

¶ 20.   Rather than responding to this contention directly, DeBraska attempts to shift responsibility for the true facts to Quad by focusing on the statutory provision requiring the exercise of "reasonable diligence." *See* WIS. STAT. § 895.05(2) ("To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts . . . published as the libeled person's statement, shall constitute a correction."). He argues:

> Defendants' arguments also ignore their duties and obligations under the statute. The statute, by its terms, requires the defendants to exercise "reasonable diligence" to ascertain the true facts for purposes of a retraction. WIS. STAT. § 895.05(2). The statute further provides that, if after the exercise of reasonable diligence, the defendants are **unable** to ascertain the true facts with certainty, they may satisfy their obligations under the statute by publishing the libeled person[']s statement. *Id.* After receiving DeBraska's notice which clearly advised that he was sleeping at the time of the alleged events, defendants neither printed a retraction, or DeBraska's letters. Instead, they did nothing.

(Bolding in brief.)[8]

---

[8] Quad argues that an article that ran in the *Milwaukee Journal Sentinel* more than a year before Chandlers article in *Milwaukee Magazine* makes it clear that the true facts were not ascertainable with definiteness and certainty. *See* WIS. STAT. 895.05(2). Quad attached to its answer a copy of the article, which read in pertinent part:

> Also, the president of the police union at the time, Bradley DeBraska, was allowed to enter the crime scene and advised officers not to speak to internal investigators or let them into an officer's home.

¶ 21.  DeBraska's argument gets ahead of itself in that the "reasonable diligence" provision comes into play when determining whether the correction required by the statute should take the form of a retraction as opposed to a publication of the libeled person's statement of the true facts. *See* WIS. STAT. § 895.05(2). A determination as to the manner in which the correction is to be effectuated occurs after appropriate notice is afforded to those alleged to be responsible or liable for the publication. That did not occur here due to the absence of "a statement of what are claimed to be the true facts." *See id.*

¶ 22.  Because DeBraska's notice failed to include a statement of what he claimed to be true facts, we do not need to address whether his notice was further deficient because it failed to specify the statements he contends were false. The fact that the legislature joined the various requirements for valid notice with the conjunction "and" demonstrates that there are distinct

. . . .

At some point, DeBraska, then the union president, entered the scene and yelled to the suspected officers not to talk to internal investigators, witnesses and police sources said. DeBraska has acknowledged he was on the scene to advise members. DeBraska, who retired from the department March 31, did not comment for this report.

John Diedrich, *Police trample on procedure at scene,* Milwaukee Journal Sentinel Online, Apr. 11, 2005, at http://www.j sonline. com/story/index.aspx?id=317354 (last visited Dec. 10, 2008).

Quad asserted that DeBraska did not request a retraction in response to this article. DeBraska did not dispute this in his briefing.

requirements to be met. *See id.* ("Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory *and* a statement of what are claimed to be the true facts." (emphasis added)). Consequently, the failure of one requirement is sufficient to invalidate the notice. *See generally Bartholomew v. Wisconsin Patients Comp. Fund,* 2006 WI 91, ¶ 79, 293 Wis. 2d 38, 717 N.W.2d 216 (analyzing a statute governing the limitation on noneconomic damages and concluding that "[b]y using the conjunctive word 'and' instead of the disjunctive word 'or,' [the statute] makes clear that the caps . . . are not alternative provisions"). In addition, we do not address whether DeBraska was required to provide separate notice to Quad and *Milwaukee Magazine. See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (if a decision on one point disposes of the appeal, then the appellate court need not decide other issues raised).

*C. DeBraska's claim cannot be revived.*

■■■■

¶ 23.   Under the circumstances presented, we conclude that DeBraska cannot revive his claim in this matter. First, Wis. Stat. § 895.05(2) provides:   "Before any civil action shall be commenced . . . the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing . . . ." Were we to conclude that DeBraska could again attempt to comply with the notice requirements of § 895.05(2), the "[b]efore any civil action shall be commenced" language would be rendered meaningless. *Cf. State v. One 2000 Lincoln*

*Navigator*, 2007 WI App 127, ¶ 3, 301 Wis. 2d 714, 731 N.W.2d 375 (holding that dismissal with prejudice was required even though WIS. STAT. § 961.555(2)(b) does not specify "whether a dismissal for non-compliance . . . should be with prejudice or without prejudice, [because] if the State could, as it tried here, avoid the statute's sixty-day command by the simple expedient of filing a new forfeiture petition based on the same facts, the sixty-day limitation would be meaningless"). Furthermore, it is clear that time is of the essence for causes of action arising pursuant to this statute in light of the language specifying the timeframe during which correction is to be made:   "The first issue published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction." Sec. 895.05(2). These unambiguous statutory provisions support our determination that DeBraska's claim cannot be revived.

¶ 24.   In addition, this conclusion is in accord with the goal of effectuating a timely correction which "serves to limit damages recoverable for libel published in a newspaper, periodical, or magazine to actual damages, and may serve to mitigate the latter as well." *See Hucko*, 100 Wis. 2d at 379; *see also Simonson v. United Press Int'l, Inc.*, 500 F. Supp. 1261, 1265 (E.D. Wis. 1980) ("The policy behind [WIS. STAT. § 895.05(2)] appears to be the prompt correction of errors, mitigation of damage to reputation, and protection of media defendants from avoidable litigation."). The *Hucko* court explained the benefits of timely correction:

> Timely correction or retraction of libelous material can be a better remedy than damages. Three groups are affected by libel laws:   the general public; potentially libeled plaintiffs; and putative libel defendants. The community has an interest in the dissemination of

> accurate information. A correction or retraction, which
> timely provides such information, is more consonant
> with the public's interest in being informed than a
> damage award. A plaintiff has an interest in the prompt
> restoration of a reputation which cannot be provided by
> financial redress . . . . The author of potentially libelous
> statements has an interest in mitigating any damage
> caused to a plaintiff. Mitigation is facilitated where the
> speaker is promptly informed of the content of the
> allegedly defamatory articles, which statements are
> claimed to be false, and what is claimed to be the truth.

*Id.*, 100 Wis. 2d at 379 n.5 (citations omitted). Affording DeBraska another opportunity to comply with the notice requirements found in WIS. STAT. § 895.05(2) and allowing him to refile a lawsuit—now more than two years after the article's publication—would do little to further the policy behind the statute.

¶ 25.   Finally, although it was not stated in express terms, it was implicit in our reading of *Zawistowski v. Kissinger*, 160 Wis. 2d 292, 466 N.W.2d 664 (Ct. App. 1991), *overruled on other grounds by Waters ex rel. Skow v. Pertzborn*, 2001 WI 62, ¶ 30, 243 Wis. 2d 703, 627 N.W.2d 497, and *Hucko, Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 431 N.W.2d 721 (Ct. App. 1988), that the claims asserted therein were dismissed with prejudice. *See Hucko*, 100 Wis. 2d at 380–81 (" '[I]f the language of a statute . . . deals with commencement of an action, then the failure to comply with its provisions before the suit is brought requires that the complaint be dismissed.' ") (quoting *Rabe v. Outagamie County*, 72 Wis. 2d 492, 499, 241 N.W.2d 428 (1976); ellipses in *Hucko*)[9]; *Zawistowski*, 160 Wis. 2d at

---

[9] The court in *Rabe v. Outagamie County*, 72 Wis. 2d 492, 499, 241 N.W.2d 428 (1976), noted that "the failure to comply with [the county claims statute] before commencement of the

303 ("[W]e conclude that the trial court did not err by dismissing Zawistowski's libel claim for failure to give the required statutory notice."); *Super Valu*, 146 Wis. 2d at 571 (concluding that "counterclaim for defamation was barred for failure to comply with the notice requirements of sec. 895.05(2), Stats."). Notably absent from the aforementioned cases is any reference to affording the person or entity alleging libel an additional opportunity to comply with the notice requirements at issue.

¶ 26. Based on the foregoing, we conclude that DeBraska cannot revive his claim in this matter. DeBraska's action failed to comply with the plain language of WIS. STAT. § 895.05(2) in that it was commenced before satisfying the notice requirements set forth therein. Consequently, we reverse the trial court's order and remand with directions to the trial court to enter judgment on the pleadings dismissing DeBraska's complaint with prejudice.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 27. BRENNAN, J. (*concurring*). I concur in the majority's result but disagree with their conclusion that DeBraska failed to state any true facts.[1] I conclude that

action was fatal, notwithstanding compliance attempts afterwards." Although DeBraska distinguishes his claims from those present in *Rabe* and other cases addressing governmental notice statutes on grounds that the retraction statute does not contain a time limitation, *cf. id.* at 494–95 (discussing WIS. STAT. § 895.43, the precursor to WIS. STAT. § 893.80), this distinction is not dispositive.

[1] *See* majority opinion at ¶ 2: "We agree, based on our conclusion that the retraction demand did not include 'a statement of what are claimed to be the true facts.' "

in his second letter to Chief Hegerty, DeBraska partially complies with the statement of true facts requirement of Wis. Stat. § 895.05(2). Even assuming, as DeBraska asserts, that substantial compliance with the statute is all that is required, his statement of what is false is not direct and clear. His statement of true facts is only partial. Accordingly, DeBraska's notice does not comply with the notice requirement of § 895.05(2).

¶ 28.   Wisconsin Stat. § 895.05(2) requires the libeled person to:

> first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing *specifying* the article and the statements therein which are claimed to be false and defamatory *and* a statement of what are claimed to be the true facts.

(Emphasis added.) For notice to be sufficient under the statute, DeBraska must specify both the alleged false statements and then the true facts, rebutting the false statements. The degree of specificity must be enough to give the person responsible a reasonable opportunity to correct. *Id.*; *see also Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 383–84 & n.9, 302 N.W.2d 68 (Ct. App. 1981).

¶ 29.   In his July 2006 *Milwaukee Magazine* article, "See No Evil . . .," Chandler wrote two paragraphs making specific assertions about DeBraska's actions at the scene of the Jude beating:

> In the predawn hours of October 24, 2004, as a police van took Frank Jude Jr. to a hospital, Bradley DeBraska crept around the crime scene in Bay View with a finger to his lips, hushing up the off-duty cops who would later be charged with beating Jude to a pulp.

At one point, DeBraska, then head of the police union, yelled at the officers to keep their mouths shut and hustled them indoors, where, according to Police Chief Nan Hegerty, he instructed them to lock out investigators and change their bloody clothes.

¶ 30.   DeBraska wrote two letters dated August 1, 2006, demanding a retraction. One letter was addressed to Chandler at *Milwaukee Magazine* and the other was addressed to Police Chief Hegerty. Each letter was copied to the other recipient. DeBraska hand-delivered both letters (the one written to Chandler and the carbon copy of the one written to Police Chief Hegerty) to Chandler at *Milwaukee Magazine*'s offices.

¶ 31.   In the letter to Chandler, DeBraska basically utters a general denial of any criminal activity, but imbeds the denial in a sentence that begins with an accusation of poor investigation by Chandler:   "All of the information available to you would have certainly provided enough factual basis [sic] that I in fact did not engage in the criminal misconduct you allege in your article." The result of that sentence structure is that the statement is not a clear denial, and it is not a clear statement of what is false. He basically denies criminal misconduct. He does not specify the precise statements that are false. Nowhere in the letter to Chandler does DeBraska make any statement of his version of the true facts. So, if this were the only letter considered, this notice would be totally insufficient under WIS. STAT. § 895.05(2).

¶ 32.   But for reasons not entirely clear in the record,[2] the trial court considered the second letter to Chief Hegerty as part of DeBraska's notice, even though it was not attached to the complaint. In the letter to

---

[2] *See* Majority opinion,¶  5 n.4.

Chief Hegerty, DeBraska never directly states what was false in Chandler's article but does offer true facts to Chandler's first paragraph. Nonetheless, he fails to comply with the statute because he does not specify both the false statements and the true facts.

¶ 33. In the letter to Chief Hegerty, DeBraska indirectly states what he claims are false statements from Chandler's second paragraph: "You indicate through your statements that I yelled at officers to keep their mouths shut, hustled the officers indoors, instructed the officers to lock out investigators and change their bloody clothes." But again, he does not expressly state that those allegations are false. He is simply repeating what Chandler said. Two sentences later he states that if Chandler's comments were factual, he (DeBraska) would have been arrested. This is an implicit denial. However, that is not the same as specifically asserting that the comments were false, which is required by the statute.

¶ 34. DeBraska never offers his version of true facts to rebut Chandler's second paragraph. He never says what he was doing when he was on the scene. Chandler is not specific as to time. Chandler begins this second paragraph, "At one point . . .," but does not narrow the time frame. So, DeBraska's failure to offer the true facts to rebut these claims is excusable perhaps in that it would be difficult for him to know at what point in time Chandler was referring. But even so, the statute requires DeBraska to at least clearly deny the claimed activities, which DeBraska did not do here.

¶ 35. As to Chandler's first paragraph, DeBraska does make one clear statement later in the letter to Hegerty which he contends are true facts: "Incidentally, when Mr. Frank Jude was transported to the hospital I was sleeping, not 'creeping around the scene on Ellen

Street holding a finger to my lips hushing up the off duty Police Officers.' " This does rebut Chandler's first paragraph and complies with the statute with regard to the statement of true facts. But again DeBraska fails to state directly and clearly what he believes to be false statements. It is implied in his statement of true facts, but implied only.

¶ 36. Thus, DeBraska's notice, although it does state some true facts, falls short of specifying both false and true facts as required by WIS. STAT. § 895.05(2), Accordingly, I respectfully concur.